CASE 22—PETITION ORDINARY—JANUARY 20.

91   135
118   668

# Bourlier Brothers v. Macauley.

### APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. ONE PARTY TO A CONTRACT CAN NOT MAINTAIN AN ACTION FOR DAM-
AGES AGAINST A PERSON WHO HAS MALICIOUSLY ADVISED AND PRO-
CURED THE OTHER PARTY TO BREAK IT, and there are only two
exceptions to this rule.   One is where apprentices, menial servants
and others whose sole means of living is by manual labor, have been
enticed to leave their employment, and the other is where the party
breaking his contract has, by coercion or deception, been procured to
do so against his will or contrary to his purpose; and section 13 of
article 14, chapter 29, of the General Statutes, by virtue of which the
former of these exceptions exists, was intended to apply principally
to farm laborers, and can not be extended in its application so as to
include contracts for the performance of dramatic artists.

Plaintiffs, owners of a theatre, allege in their petition that they
made a contract with the manager of Mary Anderson and her com-
pany, whereby it was agreed they were to perform at plaintiffs' thea-
tre at certain dates; that defendant, the owner of a rival theatre,
having notice of the contract, did, with malicious intent to injure the
reputation of plaintiffs' theatre, induce Mary Anderson to refuse to
perform there, and made a contract with her manager, which was car-
ried out, for performance of her and her company at defendant's
theatre on the days it had been previously agreed they would per-
form at the theatre of plaintiffs, whereby plaintiffs were injured.
*Held*—That plaintiffs are not entitled to recover against defendant,
their only remedy being against the party with whom the contract
was made.

2. SAME.—An act lawful in itself can not become actionable solely be-
cause it was done maliciously.

KOHN, BAIRD & SPECKERT FOR APPELLANT.

Brief not in record.

E. F. TRABUE FOR APPELLEE.

1. One party to a contract can not maintain an action against a person
who has procured the other party to the contract to break it.   (Cooley
on Torts, p. 497; Chambers v. Baldwin, Superior Court, 11 Ky. Law
Rep., 228.)

2. An act in itself legal does not become illegal because of the motive

which prompts it. (Phelps v. Nowlen, 72 N. Y., 39; Washburne on Easements, 475; Benjamin v. Wheeler, 8 Gray, 410; Glendon Iron Co. v. Uhler, 75 Pa St., 467; Adler v. Fenton, 24 How., 407.)

3. In all cases of loss we are to attribute it to the proximate cause, and not to any remote cause. (Waters v. Ins. Co., 11 Pet., 223.)

The act of one advising another to break his contract is the remote cause of the breach.

4. The principle upon which the exceptional action in tort for enticing away a servant is based should not be extended. (Burgess v. Carpenter, 2 Rich., S. C. N. S., 7.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The cause of action stated in the petition of appellants is, in substance, that, being owners of Masonic Temple Theatre, in Louisville, they, in 1888, made a contract with H. E. Abbey, manager of Mary Anderson, a dramatic performer of great reputation, and her company, whereby it was agreed they were to perform there February 25, 26 and 27, 1889, which contract appellants complied with in every respect, having, at great expense, made necessary preparations for and advertised the performance ; but that appellee, owner of a rival theatre, though having notice of the contract, with malicious intent to injure the reputation of appellants, and of their theatre as a first-class place of amusement, and their business, wrongfully induced and procured Mary Anderson to refuse to perform at their theatre, and made a contract with Abbey, which was carried out, for performance of Mary Anderson and her company at his, appellee's, theatre on the identical days it had been previously agreed they would perform at the theatre of appellants, whereby they were injured in their credit and standing as theatrical managers, and deprived of profits they would have otherwise made, to their damage, &c.

Appellee is alleged, according to the plain meaning of the petition, to have done the act complained of as well with design to benefit himself, by securing performance of Mary Anderson and her company at his own theatre, as with malicious intent to injure appellants ; consequently, two principal questions of law arise on demurrer to the petition : First, whether one party to a contract can maintain an action for damages against a person who maliciously advised and procured the other party to break it ; second, whether an act lawful in itself can become actionable solely because it was done maliciously.

These two questions were considered and determined by this court in the case of Chambers & Marshall v. Baldwin, decided at the present term (*ante*, p. 121), and a rediscussion of them is, therefore, unnecessary. The cause of that action, as stated in the petition, was that the plaintiffs, having made a contract with one Wise for sale and delivery of his crop of tobacco at a price agreed on, defendant, being also a tobacco dealer, maliciously, and with design to injure by depriving them of profit on their purchase, and to benefit himself by becoming purchaser in their stead, advised and procured Wise, who would else have kept and performed, to break the contract.

It is, however, contended for appellant that the principle upon which the leading English case of Lumley v. Gye, 2 Ell. & Bl., 228, was decided, is correct and applicable to this. The complaint in that action was that the defendant maliciously enticed and procured a person under a binding contract to perform at plaintiff's theatre, to refuse to perform and abandon the

contract; and in one count of the declaration there was an allegation, not made in this case, that the person had agreed to perform as, and had become and was, plaintiffs' dramatic artist when so procured to abandon the employment. But it is proper to say no distinction was taken by the court between the contract regarded as merely executory, and as being in course of execution, the majority of judges deciding the action would lie in either case, while Justice Coleridge, who delivered a dissenting opinion, contended it would lie in neither.

Unlike this case, the act, made cause of action, was there alleged to have been committed with no other than a malicious motive, and inferentially for no other than a purpose to injure the plaintiff. But the dissimilarity is not material, because, if the principle by which the decision of that case was controlled can be applied here, as there, without qualification or condition, this action will lie.

The theory upon which Lumley v. Gye seems to have been decided is, that remedies given by the common law in such cases as that are not limited to any description of servants or service, and the action was maintained upon the principle stated in Comyn's Digest, that "in all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case, to be repaired in damages." Title "Action upon the lease (A)."

But it was held in Chambers & Marshall v. Baldwin that to maintain an action upon the case at common law, the act upon which it is founded must not only amount to a legal wrong, but be the proximate cause

Bourlier Brothers v. Macauley.

of the loss or damage sustained; and that, upon prin-
ciple, and according to decided weight of authority in
the United States, whether a legal wrong has been
done or not, depends upon the nature and quality of
the act, not upon the motive of the person doing it;
the following clear and forcible statement of the prop-
osition in Jenkins v. Fowler, 24 Pa. St., 308, being
quoted and approved : " Malicious motives make a
bad case worse, but they can not make that wrong
which in its own essence is lawful."

In reference to the other of the two main questions
involved, it was there held that as the reasonable and
necessary presumption in every case of a binding con-
tract is that each party enters into it with his eyes
open, and purpose and expectation of looking alone
to the other party for redress in case of breach by
him, the following rule stated in Cooley on Torts,
497, and previously contended for by Justice Coleridge
in Lumley v. Gye, is correct on both principle and
policy : "An action can not, in general, be maintained
for inducing a third person to break his contract, the
consequence after all being only a broken contract,
for which the party to the contract may have his
remedy by suing upon it." And it was further held,
that there can be consistently and safely but two
classes of exception to that rule. One was made by
the English Statute of Laborers, passed in 25 Edward
III, to apply where apprentices, menial servants, and
others, whose sole means of living was by manual
labor, were enticed to leave their employment, and
may be applied in this State in virtue of and as reg-
ulated by our own statute. The other arises where

one party to a contract has been procured against his will or contrary to his purpose, by coercion or deception of a person, to break it to the damage of the other party.

If the opinion of this court in that case is to stand, it does not make any difference whether appellee was actuated by merely malicious motives to injure appellants or by that and the additional one of personal benefit; and it is, therefore, necessary to inquire whether the facts stated bring this case within the first-named exception to the rule that only a party to a contract can be sued for its breach, the other exception manifestly having no application. But, of course, the question whether the act was in itself a legal wrong is always, in such case, vital and precedent.

It is not the policy of the law to restrict or discourage competition in any business or occupation, whether concerning property or personal service, there being no good reason for making more stringent regulations in respect to the latter, except where some one of the domestic relations exists, than the former; for if, in order to leave sale and exchange of property free and unrestrained, a person may lawfully, and without legal inquisition of his motive, buy what another offers for sale, and has right to sell, it is no less just and expedient that, in order to have fair remuneration for labor, a person be allowed to hire the service of any one *sui juris* who offers to be hired; and in every case the employer should be required to look alone to the person employed, for breach of the contract, just as the seller must look to the buyer and the

creditor to the debtor in default of payment; for, to enforce a doctrine making the hirer responsible for breach by the person hired of a previous contract with another involves legal recognition of personal dominion, bordering on pure servitude, which is neither in harmony with our form of government nor well for those who labor for subsistence; and such doctrine can be applied in this State only where expressly provided by statute, and, being arbitrary, should be extended no farther than was clearly intended by the Legislature.

Chapter 74, General Statutes, prescribes rights and duties growing out of the relation of master and apprentice, and article 2 thereof provides, as was done by the statute of 1798, that persons who come into this State under a contract to serve another in any occupation shall be compelled to perform the contract specifically during the time thereof, not exceeding seven years.   But the only existing statutory provision which authorizes another than a party to it to sue for a breach of contract is section 13, article 14, chapter 29, as follows: "If any person shall willfully entice, persuade or otherwise influence any person or persons who have contracted to labor for a fixed period of time to abandon such contract before such period of service shall have expired, without the consent of the employer, shall be fined not exceeding fifty dollars, and be liable to the party injured for such damage as he or they may have sustained."

We are satisfied that statute, passed soon after slavery ceased to exist in this State, and consequent change of the labor system took place, was intended

to apply principally to farm laborers, and to extend application of it so as to include contracts for performance of dramatic artists would be not only fraught with much injustice, unnecessary strife and litigation, but entirely beyond the intended scope and operation of it.

In our opinion, the only remedy appellants have is against Abbey, who made, and whose voluntary breach of the contract was the direct cause of the alleged loss and damage, and the action can not be maintained against appellee.

Judgment affirmed.