## SUPERIOR COURT OF BALTIMORE CITY

Filed November 29, 1892.

No. 7507, Rights of Labor.

### GEORGE W. LUCKE

### VS.

### THE CLOTHING CUTTERS & TRIMMERS ASSEMBLY.

*William L. Marbury, Henry J. Bowdoin* and *William L. Hodge* for plaintiff.

*William Pinkney Whyte* for the defendant.

RITCHIE, J.—

The plaintiff was a "custom" cutter, as distinguished from "shop" cutter, and in August, 1891, was employed by Rosenfeld Brothers, the proprietors of the New York Clothing House. The defendant is one of the assemblies or trade unions of the organization known as Knights of Labor. Its membership consists of clothing cutters and trimmers, and it is a body corpor-

ate, having been incorporated under the Act of 1884, Ch. 267, which authorized incorporations for the formation of trade unions "to promote the well-being of their every day life, and for mutual assistance in securing the most favorable conditions for the labor of their members, and as beneficial societies." Code, Art. 23, Sec. 37.

The plaintiff was discharged February 16, 1892. This suit is not brought against Rosenfeld Brothers on the ground of an alleged wrongful discharge, but against the defendant on the alleged ground that it unlawfully procured or occasioned his discharge.

The declaration alleges that the plaintiff had a contract with Rosenfeld Brothers to the effect, in substance, that if his work was satisfactory, he should continue in their employ as long as he desired to do so; that his work was satisfactory; that he desired to continue and that he practically had permanent employment with such firm, but that the defendant did *"wrongfully and maliciously,"* by means of *threats* and *intimidation* exercised upon the said New York Clothing House, induce and persuade the said New York Clothing House to break its *said contract* with the said George W. Lucke, and to discharge him from its employ."

The plaintiff contends:

First, That he had a contract of employment, and its breach was caused in the manner above set forth.

Secondly, That even if he had no contract, he at least had employment, with a reasonable assurance of its being permanent, and that he lost his situation by reason of the wrongful and malicious act of defendant.

As to the first. The breach of a contract is the act of the party who breaks it, and the general rule of law is that the remedy must be by suit against the party who had broken the contract. The plaintiff, however, in claiming a right of action against a third party, alleged to have caused the breach, relies upon the case of Lumley vs. Gye, 2 Ell. & Bl. 216, and such others as have accepted the decision in that case as authority.

In Lumley vs. Gye the plaintiff, the manager of a theatre, had a contract with a certain opera singer that for a period of three months she would act at his theatre and not elsewhere,

and the declaration alleged that the defendant, a rival manager, *"wrongfully* and *maliciously* enticed and procured" the said singer to break her contract. On demurrer to the declaration the judgment was for the plaintiff, Justice Coleridge dissenting.

This case has never been fully accepted as authority either in England or America. The only English case referred to which has followed the decision in Lumley vs. Gye, is that of Bowen vs. Hall, 62 B. Div. 333, which was also decided by a divided Court and in which the majority of the Court while accepting the authority of Lumley vs. Gye, criticise, to some extent, the grounds upon which that case was determined. Some Courts in this country have, with certain limitations, followed Lumley vs. Gye, and others have refused to do so. In a very recent case in which the facts were similar, the Court of Appeals of Kentucky rejects the law of that case, Boulier vs. Macauley, 15 S. W. Rep. 60.

In Ensor vs. Bolgiano, 67 Md. 190, the case of Lumley vs. Gye was relied on by the plaintiff; Allen had employed Ensor as his attorney and the declaration alleged that Bolgiano had "wrongfully and maliciously" induced Allen to break his contract with Ensor. The case, however, went off on a failure of proof and the majority of the Court which decided it did not, therefore, find it necessary to say, and did not say, whether Lumley vs. Gye would, in a like case, be followed in this State or not. This case has been referred to thus much because it has some bearing on the second proposition of the plaintiff, but neither it, nor the first proposition, need be more fully considered because the plaintiff has failed to prove a breach of any contract of service.

The evidence shows that, while the service of plaintiff was satisfactory, his contract of employment was only by the week, and that his discharge was at the end of a week. He himself testifies that his contract was only from week to week and that Rosenfeld Brothers had a right to discharge him when they did.

Second. The plaintiff's counsel, while arguing with much force on principle, have not been able to produce any case in which a discharged

employe has, under such circumstances as are here alleged, maintained a suit against a third party for the loss of his situation.

Assuming however for the purposes of this case, that an employe would have such right of action, it certainly cou.d not be maintained on less proof than would be necessary in the case of a suit for causing a breach of contract for service; that is to say, it must at least be shown that the act of the third party which caused the discharge was "wrongful and malicious."

This second proposition of the plaintiff requires a fuller review of the evidence. The evidence discloses a case of hardship. It is always a hardship when a capable employe without fault on his part loses his situation, but a hardship does not imply a legal wrong and the question to be passed on now is one of legal liability.

The proof shows that plaintiff was a non-union cutter; that the defendant was in "The Critic," a newspaper published in Baltimore City in the interest of organized labor, and by other means, a list of clothing houses which employed none but union labor, and to recommend to all members of organized labor the patronage of such houses; that in February, 1891, a member of defendant called on the firm of Rosenfeld Brothers with a copy of said paper containing a list of clothing houses thus recommended, and asked the firm if it would not like to have the advantage of such advertisement; the firm expressed a desire to be included in the list, and upon being told that they would be included if they agreed to employ none but union labor, assented to the proposition, and within a few days, as soon as their house was clear of non-union employes, the name of the firm, with a recommendation of it to the patronage of union labor, was inserted in said paper and in all of defendant's publications; that in August, 1891, when plaintiff was employed, the rule of Rosenfeld Bros. was to employ none but union labor, but under the impression that the defendant organization did not extend to custom cutters, the plaintiff was not asked whether he was a member or not; that had they known that the Assembly embraced custom cutters, and that plaintiff was not a member, they would not have employed him; that sometime in No-

vember, 1891, the attention of said firm was, by a casual customer, called to the fact that their house had been omitted from one of the recently published lists of defendant; that said firm immediately made inquiry among its employes and discovered that plaintiff was a non-union cutter, although their other custom cutter and their "shop" cutters were all members they then told plaintiff that he must join the union if he wished to remain with them; plaintiff expressed his willingness to do so, and asked Franz, a member and co-employe, to make application for him.

The plaintiff testifies that Franz reported that he had proposed him, but that his application could not be acted on because they were so many members out of employment, the defendant was not then taking in any new ones; Franz testifies that, through some one else, he sent for a blank form of application, but received the reply that it was necessary for the applicant to apply in person and on a certain night of the month; that he reported this to the plaintiff, and the plaintiff then took no further steps in the matter.

Early in February, 1892, a committee of the defendant waited upon Rosenfeld Bros. and told them they were not keeping their agreement of February, 1891; that they had a non-union man in their employ, referring to plaintiff; one of the firm replied that he thought Lucke had joined; Lucke was called down and said he was willing to join, and had made application; he testifies that he thereupon gave his name to this committee, who said they would make application for him and that everything would be attended to. One of the committee testifies that Lucke said he had made application, and that his name and address were taken only for the purpose of ascertaining whether or not this statement was correct. At this interview Mr. Rosenfeld, when he discovered that the plaintiff was not a member, stated that he would at once discharge him if the committee wished it, to which the committee replied that they did not wish him to discharge the plaintiff. Nothing further was done by plaintiff towards becoming a member. About a week later, on February 16, 1892, the defendant wrote to Rosenfeld Bros. "that in case the nonunion man whom you have in your

employ is any longer retained, we will be compelled to notify all labor organizations of the city that your house is a non-union one"; and the plaintiff because of this letter was thereupon discharged.

It is important to note that the plaintiff offered no competent evidence to show what would have been the effect or consequences to Rosenfeld Bros. of a notice to the labor organizations that their house was a non-union one. One of the firm testified that he *believed* that the effect of such a notice would have been the loss to their house of the patronage of organized labor, and that the rest of their employes would have been called out, but the same witness further testified that he had never known or heard of any instance in Baltimore where the Union men had been called out because of the employment of non-union labor. The uncontradicted evidence on behalf of the defendant is that the local law of this assembly, as well as the general law of the order of the Knights of Labor, prohibited the calling out of their members because of the employment of non-union labor, and that no such consequence would have followed the refusal of the firm to discharge the plaintiff.

There is no evidence to show that the notice referred to would have resulted in anything else than the withdrawal of the name of Rosenfeld Bros. from the advertised lists of defendant and the loss of patronage which might follow the withdrawal of its recommendation of their house, the advantage of which advertisement and recommendation they had enjoyed for nearly a year on the faith of their promise to aid and encourage organized labor by the employment of none but union men. Had this happened the firm would simply have been put again in the position they occupied prior to the understanding of February, 1891.

So far as Rosenfeld Brothers acted under the influence of a desire to retain certain business advanatges which the defendant had a right either to extend or withdraw, they were not acting under the coercion of threats or intimidation; so far as they acted under an apprehension of loss or injury of any other character, there is nothing in the evidence to show that the defendant gave them any reasonable grounds for entertaining it.

It is argued by the plaintiff that there was a concealed threat in the letter of February 16 to call out all the union employes of Rosenfeld Brothers and thus injure their business, and that therefore the act of defendant in sending that letter was wrongful and malicious. But there is no evidence whatever, either in the language of the letter or in the circumstances under which it was written, or otherwise in the case, to warrant such contention. On the contrary the uncontradicted evidence is that no such action was contemplated, that it would not, and under the laws of the order could not, have been taken.

Whether, if notice had been given that the union men would be called out, such act would have been intimidation or not, it is not necessary to decide in this case. All that it is necessary now to decide is that there is no sufficient evidence of any intention or threat to call out the union workmen, or of any intimidation.

It is further claimed by the plaintiff that there is evidence of malice in the failure of defendant to elect him a member.

The testimony shows that plaintiff was informed in November by Franz (his fellow-workman, who had been requested to propose him for membership) that it was necessary for him to apply in person and on a particular night; and that from that time until February the plaintiff took no further steps to have himself elected. The plaintiff testifies that in February he gave his name to the committee which waited on Rosenfeld Bros. and they promised to have him elected. Accepting his version of this interview, the members of this committee could have been acting only as individuals in making any such promise. They were appointed for no such purpose, and had no authority to make such promise. No three members of a corporate body comprising nearly six hundred members, can bind the corporation by a promise that any individual shall be elected, particularly when such a promise, as in this case, would have been in direct violation of the rules of the union. The plaintiff had been informed by Franz in November that a personal application was neces-

sary; and the testimony further shows that it was necessary for an applicant to fill out and sign a prescribed form of application, to present that in person to a board of examiners and submit himself to an examination as to his qualifications; that if the report of the board was favorable, it was forwarded to the secretary, who then submitted the name to a meeting of the union, and the election of the applicant then depended upon the vote, a certain number of black balls being sufficient to defeat his election. The plaintiff failed to inform himself as to the rules of the union, or to comply with them in seeking membership, and the fact remains that he never applied in proper form.

There is some evidence that there was then temporarily in force a general resolution that the union would not admit any new members, because so many of its men were then out of employment, and the plaintiff contends that the operation of this resolution prevented the proposal of his name, and would have prevented his election, even had his application been in proper form. But, if there were such a resolution then in force, there is no evidence that it had any special reference to the plaintiff, or was passed otherwise than in the general interest of the union. In all the testimony relating to plaintiff's efforts, and his failure, to become a member, I can see no evidence of any malice or of any wrongful act on the part of the defendant.

On the rights of trade unions, the extent to which they may lawfully go in furtherance of their purposes, and on what amounts to intimidation, I refer to the following authorities:

Curran vs. Treleaven, 2 Q. B. Div. (1891) 545; Commonwealth vs. Hunt, 4 Met. 111; Bowen vs. Matheson, 14 Allen 499; Snow vs. Wheeler, 113 Mass. 179; Payne vs. The Western & A. R. R., 13 B. J. Lea. 507; Johnston Harvester Co. vs. Meinhart, 60 How. Pr. 171; Master Stevedores vs. Walsh, 2 Daly 5.

There being no evidence of the breach of any contract of service, and no evidence of any wrongful and malicious act on the part of the defendant, I must reject the prayer of the plaintiff and grant the prayers of the defendant.