CASE 85—ACTION BY JAMES E. DOYLE AGAINST THE STANDARD OIL CO. AND OTHERS FOR A CONSPIRACY TO INJURE PLAINTIFF'S BUSINESS.— SEPTEMBER 28.

# Standard Oil Co., &c. v. Doyle.

APPEAL FROM FAYETTE CIRCUIT COURT—WATTS PARKER, CIRCUIT JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL. AFFIRMED.

CONSPIRACY—UNFAIR COMPETITION—EVIDENCE—ADMISSIBILITY—SUF-FICIENCY—MALICE AND BAD MOTIVE—DAMAGES—DEPOSITIONS— STATUTE—INSTRUCTIONS—ORAL REPETITION—INQUIRY BY JURY— ANSWERS BY COURT—REMARKS OF COUNSEL—VERDICT—INE-QUALITY.

1. Whether a conspiracy formed for the purpose of injuring or driving one out of business be lawful or unlawful, so far as the purpose is concerned, where unlawful means are used effectuating that purpose, the conspiracy becomes actionable.

2. It is unlawful for those forming a conspiracy for the purpose of injuring another's business as oil merchant to harass and annoy his employes while selling and distributing oils to his customers.

3. It is unlawful for those forming a conspiracy for the purpose of injuring another's business as oil merchant to threaten his customers to shut them up in their business if they continue to deal in his oils.

4. It is unlawful for those forming a conspiracy for the purpose of injuring another's business as oil merchant to cause false and injurious reports concerning his business to be circulated in the city and its vicinity where he is doing business.

5. It is unlawful for those forming a conspiracy for the purpose of injuring another's business as oil merchant to procure his arrest and prosecution on false charges in connection with his business in the sale of oils to alienate his acquaintances and patrons.

6. In an action for damages for injuring plaintiff's business as oil merchant, or driving him out of it, through a conspiracy of defendants, evidence examined, and whether a conspiracy was formed, held to be a question for the jury.

7. In an action for damages resulting from the formation of a conspiracy, when the conspiracy is once established, or facts are

adduced which justify the inference of a conspiracy, the acts and declarations of each conspirator made pursuant to and in furtherance of the conspiracy after its formation and before its completion are competent evidence against all.

8. The acts and declarations of a conspirator after the completion of the purpose for which the conspiracy was formed are competent evidence only against that particular conspirator.

9. Civ. Code, sec. 583, provides that the officer before whom depositions are taken may send them by private conveyance in a sealed envelope directed to the clerk of the court in which the action is pending, and make oath that they have not been opened in their transit, and that the clerk shall indorse on the depositions the time and mode of their reception, and the affidavit, if any, of the person delivering them. HELD, that the requirements of the Code are met where depositions were sent through an express company, the officer taking them making affidavit as to the individual agent of the express company to whom she delivered the depositions, and such agent, with all others of the express company into whose hands the depositions passed to the time they were delivered to the clerk of the court making affidavits that the depositions had not been opened in transit, and the clerk making affidavit that the depositions reached him in a sealed envelope.

10. In action for damages resulting from the formation of a conspiracy to injure plaintiff's business as oil merchant, to which a corporation and two individuals were made parties defendant, after the case had been submitted to the jury they returned to the court room and asked for information whether, if they believed that three were in the conspiracy, could they find against two and leave the other out. HELD, that the response of the court to the question to the effect that, if the evidence shows that three defendants were in the conspiracy, and that the plaintiff is entitled to a verdict against all three, the jury should so find, but, if the jury think that the verdict is warranted, they may find a verdict against the different defendants in different amounts, being but an oral restatement of an undoubted proposition of law contained in the written instructions, was not cause for reversal.

11. Nor was the oral statement subject to the objection that the last part was not responsive to the question.

12. In an action for damages resulting from the formation of a conspiracy to injure plaintiff's business as oil merchant, to which a corporation and certain individuals were made parties defendant, remarks of counsel for plaintiff, in argument to the jury, the effect of which amounted only to his opinion as to the great desire of the corporation to relieve itself of a competitor in

Standard Oil Co., &c. v. Doyle.

the oil business in the city where plaintiff had his place of business, are legitimate.

13. In an action for damages resulting from the formation of a conspiracy to injure plaintiff's business as oil merchant, to which a corporation and two individuals were made parties defendant, it was within the province of the jury to determine from the evidence which of the conspirators was most in fault, and who would be benefited most by the formation and success of the conspiracy; and hence a verdict assessing $2,300 damages against the corporation, $300 against one of the individuals, and nothing against the other individual is no evidence of passion and prejudice on the part of the jury.

BRECKINRIDGE & SHELBY, ATTORNEYS FOR APPELLANT. E. L. HUTCHISON, OF COUNSEL.

### POINTS AND AUTHORITIES.

#### STATEMENT.

This is an action by the appellee against the appellants for conspiracy to make the Wilburine Oil Co. cancel its contract, and drive him out of the oil business by various acts set out in the petition for the purpose of preventing competition.

### ARGUMENT.

1. A peremptory instruction ought to have been granted.

(1.) There was no evidence that justified the verdict of conspiracy.

(2.) There was no evidence that Doyle had been damaged, while the evidence established the fact that he was still the agent of the Wilburine Oil Co., and still in its employment.

(3.) The acts of the defendants and each of them were legitimate for the purpose of building up their own, business and as against the appellee as a competitor.

(4.) If the appellee suffered any damage it was *damnum absque injuria.* Bourlier Bros. v. Macauley, 91 Ky., 136; Chambers, &c. v. Baldwin, 91 Ky., 121; Brewster v. Miller's Sons Co., 101 Ky., 368; West Virginia Transportation Co. v. Standard Oil Co., 50 W. Va., 611 (88 Am. State Rep., 895); Continental Insurance Co. v. Board of Underwriters, 67 Fed., 310; Baker v. Metropolitan Life Ins. Co., 243 Ky. Law Rep., 1174; 8 Am., 287.

2. Even if defendants were not entitled to a peremptory instruction, the verdict should have been set aside as unsupported by the evidence and a new trial granted; because the rule requiring a submission to the jury if there be a scintilla of evidence

Standard Oil Co., &c. v. Doyle.

does not mean that a verdict may be sustained upon such mere scintilla. Hurt v. L. & N. R. R. Co., 25 Ky. Law Rep., 754; Civil Code, sec. 341.

3. The depositions of Carrie Schrader and W. C. Chipps should have been suppressed. Civil Code, sec. 583; Breeden v. Stamper, 11 B. Mon., 177.

4. The court erred in not admonishing the jury as to the relevancy of the testimony of certain witnesses as against the respective defendants.

(1.) The jury ought to have been told that the testimony of the witnesses, Prof. Scovell and Prof. Peters, Dr. O'Mahoney, Mr. O'Shea and others who purchased the condemned oil ought not to have been considered as evidence against the Standard Oil Co.; that evidence in relation to the arrest of Doyle at the instance of Chief Muir by the procurement of Gilman, the evidence concerning the inspection and condemnation of the oil and gasoline also ought not to be considered by the jury in relation to the Standard Oil Company and also as against the defendant, Gilman.

(2.) The jury ought to have been told that the testimony of the witness Griffith, Martin, Woolfolk and others concerning certain conversations with Bonnycastle, and the testimony of Carrie Schrader and W. C. Chipps ought not to have been considered by it as against Gilman.

5. The court erred in overruling the various instructions offered by the defendant, and in refusing to modify, upon motion of the defendants, the instructions given by the court, and in refusing to give any instruction as to the rights of the defendants in extending their own trade and in competition with the plaintiff.

See authorities above quoted.

6. The court erred in making any answer to the alleged question of the jury, and in adding to the response a written instruction not germane to that question nor in response to it. Civil Code, sec. 321.

7. Appellants are entitled to a reversal on account of the misconduct of the counsel of the appellee in his closing argument. Chicago, &c., R. R. v. Musick, 76 S. W., 221; McKnight v. United States, 97 Fed., 209; Gilbert v. Commonwealth, 21 Ky. Law Rep., 544; Rodes v. Commonwealth, 21 Ky. Law Rep., 1076; Parrott v. Commonwealth, 20 Ky. Law Rep., 763.

8 The verdict is evidently the result of passion and prejudice. A verdict under this testimony against the Standard Oil Co. of $2,300.00 and against C. B. Gilman for $300.00 demonstrates that it is the result of passion or prejudice, and ought to be set aside.

Standard Oil Co., &c. v. Doyle.

MORTON, WEBB and WILSON, for appellees.

### POINTS AND AUTHORITIES.

Evidence in actions for conspiracy. Murray v. McGarigle, 69 Wis., 483; s. c., 34 N. W. Rep., 522; North. Pac. Ry. Co. v. Kindred, 14 Fed. Rep., 77; Com. v. Ward, 92 Ky., 158; Hundley v. L. & N. Ry. Co., 105 Ky., 162, 168; Metcalfe v. Connor, Litt. Sel. Cases, 479; s. c., 12 Am. Dec., 340; 6 Am. & Eng. Ency. of Law, (2d Ed.), 840, 864, 866, 869; Greenleaf on Evidence (16th Ed.) vol. 3, sec. 93; Also Id., vol. 1, sec. 184a; Abbott's Crim. Trial Brief (2d. Ed.), p. 478; Lawson v. State, 20 Ala., 65; s. c., 56 Am. Dec., 182; Wright on Crim. Conspiracies, pp. 212, 217.

1. Does evidence fairly show a conspiracy? Ky. Stats., sec. 2193.

2. Does petition charge actionable conspiracy? Murray v. McGarigle, 69 Wis., 483; s. c., 34 N. W. Rep., 522; Lubricator Oil Co. v. Standard Oil Co., 42 Hun., 153; s. c., 106 N. Y., 669; s. c., 12 N. E. Rep., 825; Van Horn v. Van Horn, 52 N. J. L. 284; s. c., 20 Atl. Rep.. 485; Wildee v. McKee, 111 Pa. St., 335; s. c., 56 Am. Rep., 271; Hawarden v. Youghiogheny & Lehigh Coal Co., &c., 111 Wis., 545; s. c., 55 L. R. A., 828; 6 Am. & Eng. Ency. of Law (2d Ed.), 877.

3. Evidence of wrongful acts. Ky. Stats. secs. 1349; 2205, 2193.

4. Were appellee's customers alienated or his business injured?

5. Should the verdict stand? Wright's Crim. Conspiracies, p. 128; State v. Larkin, 49 N. H., 39; Buckles, &c. v. Lambert, 4 Met., 330; City Pass. Ry. Co. v. Kuhn, 86 Ky., 578; Act of Feb. 14, 1839; 3 Stat. Law of Ky. (Loughborough), p. 572; Alexander, &c. v. Humber, 86 Ky., 565; Buffalo Lubricating Oil Co. v. Everest, 30 Hun. (N. Y), 588.

6. Admonitions given by the court. Abbott's Crim. Trial Brief, p. 477; People v. Arnold, 46 Mich, 268; s. c., 9 N. W. Rep., 406; Lawson v. State, 20 Ala., 65; s. c., 56 Am. Dec., 182; Smithern, &c. v. Waddle, &c., 19 Ky., Law Rep., 1418.

7. Must gasoline be "tested?" Burkhardt's Admr. v. Striger, &c., 24 Ky. Law Rep., 69.

8. Should depositions of Shrader and Chipps have been suppressed? Civ. Code, sec. 583, sec. 732, subsec. 5; Ky. Stats, sec. 457; Const. of Ky., sec. 208; Adams Ex. Co. v. Schofield, 23 Ky. Law Rep., 1120; Adams Ex. Co. v. Crenshaw, 78 Ky., 136; Civ. Code of 1854, sec. 646; Breeding, &c. v. Stamper, 18 B. Mon., 175; 1 Sess. Acts, 1861, p. 20.

9. Damages properly limited. Haskell Co. Bank v. Bank of Santa Fe, 51 Kans., 39; s. c., 32 Pac. Rep., p. 624.

10. The Kentucky Cases. Chambers, &c. v. Baldwin, 91 Ky., 121; Bourlier, &c. v. Macauley, 91 Ky., 135; Schulten v. Bavarian Brewing Co., 96 Ky., 227; Brewster v. Miller, 101 Ky., 368; Baker v. Metropolitan Life Ins. Co., 23 Ky. Law Rep., 1174; English Ruling Cases, vol. 17, p. 284; Moran v. Dunphy, 52 L. R., 115; Hundley v. L. & N. R. R. Co., 105 Ky., 162.

OPINION OF THE COURT BY JUDGE NUNN—AFFIRMING.

This appeal is prosecuted from a judgment of the Fayette circuit court awarding appellee $2,300 in damages against the Standard Oil Company and $300 against C. B. Gilman, and involves some interesting questions. The appellants claim that a cause of action was not stated in the petition, and the court erred in overruling their demurrer thereto. It was, in substance, alleged in the petition that in the spring of the year 1901, in the city of Lexington, Ky., the appellants C. B. Gilman and M. F. Griffith, composing the firm known as the Brilliant Light Oil Company, and the Standard Oil Company, a corporation, did maliciously, unlawfully, and wickedly conspire, combine, confederate and agree together between and among themselves to estrange and alienate the acquaintances, customers, and patrons of the appellee, to ruin, oppress, and impoverish the appellee, and drive him out of the business of selling and contracting for the sale of oils, gasolines, etc., and to deprive him of all benefit and profit under his said contract with the Wilburine Oil Works Company. After setting out the series of wrongful acts, which we will hereafter refer to, it continued as follows: That each and all of the wrongful acts were done in pursuance of the conspiracy alleged as existing between and among the several defendants, and that by reason of such conspiracy, and of the commission of the named wrongful acts in furtherance and execution thereof, appellee had been forced to give up and

quit the business of buying, selling, and dealing in illuminating oil, gasolines, etc., in the city of Lexington and vicinity, and had been forced to cancel his contract with the Wilburine Oil Works Company, and had been thereby deprived of all benefit and profit arising therefrom, and had been deprived of the opportunity to earn a livelihood for himself and family, and had been wrongfully prevented from engaging at his own home in the business and vocation of his life, which he had been pursuing for many years, and for which, from his long experience therewith and his extensive and favorable acquaintance in Lexington and vicinity, he was thoroughly fitted. It is contended that the acts of appellants, and each of them, as alleged, were legitimate for the purpose of building up their own business, and as against the appellee as a competitor, and if the appellee suffered any damages it was *damnum absque injuria;* and cite the following cases as sustaining their position: Bourlier v. Macauley, 91 Ky., 136, 12 R., 737, 15 S. W., 60, 11 L. R. A., 550, 34 Am. St. Rep., 171; Chambers v. Baldwin, 91 Ky., 121, 12 R., 699, 15 S. W., 57, 11 L. R. A., 545, 34 Am. St. Rep., 165; Brewster v. Miller Sons & Co., 101 Ky., 368, 19 R., 593, 41 S. W., 301, 38 L. R. A., 505; Baker v. Metropolitan Life Ins. Co., 64 S. W., 913, 23 Ky. Law Rep., 1174, 52 L. R. A., 271; West Va. Transportation Co. v. Standard Oil Co., 50 W. Va., 611, 40 S. E., 591, 56 L. R. A., 804, 88 Am. St. Rep., 895; and Continental Ins. Co. v. Board of Underwriters (C. C.) 67 Fed., 310.

These cases are easily distinguished from the case at bar. The first two cases cited in effect decide that a third party can not be made responsible in damages for causing a party to a contract to break it unless force or fraud is used in accomplishing the result. In such cases, without

an allegation and proof of force and fraud, the party breaking the contract must be regarded as having broken it of his own will, and for his own benefit, and is alone responsible to the other party to the contract in damages. The third case cited in substance decides that no cause of action arises in favor of a person who is refused the right to purchase articles from a dealer; the merchant or dealer having the lawful right to sell or refuse to sell to whom he pleases. In the case of Baker v. Metropolitan Life Ins. Co., it was sought to recover damages from the company, and charged it with maliciously combining and confederating with other companies to prevent him (Baker) from receiving employment as an insurance agent at Lexington, for the term of two years, and in pursuance of such conspiracy the Metropolitan Company discharged him from its employment without any fault on his part, and by reason thereof he had been deprived of earning his livelihood. The court decided the case against Baker for the reason that he alleged in his petition that his employment was for an indefinite length of time, he had therefore, the right to quit whenever he saw proper, and the company had also the right to terminate the employment at pleasure; and the court also approved the principles announced in the case of Brewster v. Miller Sons & Co., to the effect that it is lawful in one to decline to enter into a business undertaking with any one. The other two cases referred to do not support appellants' contention. In the petition a malicious conspiracy and confederation on the part of appellants to injure appellee in his business was charged; also the means employed by them to effectuate their purpose, and the injury and damage resulting to appellee by reason of the alleged wrongs. The charge of malicious conspiracy, confederation, etc., against appellants, even if true, did not give appellee a

cause of action, unless the means used by them to carry out their purpose were unlawful, and that by such means they succeeded in injuring appellee's business. Malice and bad motive alone do not constitute a cause of action, but where one exists they only make it worse for the defendants. Undoubtedly one man may by fair methods compete with a rival until by sheer force of competition, by underselling or outbidding him, his own business is built up to the detriment and ruin of his rival. The damage in such case is in the eye of the law *dammum absque injuria*. But a different case is presented where one seeks not only to build up his own business at the expense of a rival's, but to impair, and if possible, destroy, that rival's business by the use of unlawful means by saying and doing that which he has no lawful right to say and do, in so far as it works loss and damage to his rival. It is also true whether a conspiracy formed for the purpose of injuring or driving one out of business be lawful or unlawful, so far as the purpose is concerned, yet, where unlawful means are used in effectuating that purpose, the conspiracy becomes actionable, and any loss or damage suffered in consequence may be recovered.

The petition in apt words alleged the conspiracy, the means used to effectuate the purpose and the resulting loss to appellee. The remaining matter to be determined is whether the alleged means used to injure or drive appellee out of business were lawful or unlawful. If lawful, the petition did not state facts sufficient to constitute a cause of action; if unlawful it did and the lower court did not err in overruling appellants' demurrer. That part of the petition which describes the means used to effectuate their purpose is as follows: "By wanton and malicious interference with plaintiff's business and the conduct thereof in obstructing, harassing, and annoying plaintiff's servants and em-

ployes while engaged in the discharge of their respective duties in selling and distributing oils, etc., to plaintiff's customers and patrons, and by willfully enticing, persuading, and otherwise influencing such servants and employes to leave plaintiff's employ, against the will and consent of plaintiff; by threatening certain wholesale customers of plaintiff to shut them up in their business if they continued to purchase and deal in plaintiff's oils, etc.; and by threatening both wholesale and retail customers of plaintiff, that it (the Standard Oil Company, aforesaid) would refuse to sell them oil, gasolines, and other commodities dealt in by said defendant as long as they continued to purchase such articles, or any of them, from plaintiff; by causing and procuring false and injurious reports concerning plaintiff and his business to be circulated in and about the city of Lexington, and published in certain of the daily newspapers of the city; by causing and procuring plaintiff to be arrested on various charges of violating the ordinances of said city, and the criminal and penal laws of the city of Lexington and Commonwealth of Kentucky, and to be prosecuted therefor; and by divers and sundry wrongful acts to estrange and alienate the acquaintances, customers, and patrons of the plaintiff, to ruin, oppress, and impoverish the plaintiff, and drive him out of the business of contracting for the sale of oils, gasoline," etc. It was most assuredly unlawful to obstruct, harass, and annoy appellee's employes when engaged in the discharge of their duties in selling and distributing oils to appellee's customers; to threaten customers of appellee to shut them up in their business if they continued to deal in appellee's oils; to cause and procure false and injurious reports concerning appellee and his business to be circulated in Lexington and vicinity; and to procure appellee's arrest and prosecution on false charges

in connection with his business in the sale of oils for the purpose of estranging and alienating the acquaintances, customers, and patrons of appellee. See the cases of Murray v. McGarigle, 69 Wis., 483, 34 N. W., 522; Buffalo Lubricating Oil Co. v. Standard Oil Co., 42 Hun, 153; Van Horn v. Van Horn, 52 N. J. Law, 284, 20 Atl., 485, 10 L. R. A., 184; Heywood v. Tillson (Me.) 46 Am. Rep., 379; Payne v. Railroad Co. (Tenn.) 49 Am. Rep., 666; and West Va. Transp. Co. v. Standard Oil Co., 50 W. Va., 611, 40 S. E., 591, 56 L. R. A., 804, 88 Am. St. Rep., 895.

The appellants claim that the court erred in refusing to give a peremptory instruction on their behalf at the close of appellee's evidence and at the close of all the evidence. The testimony is voluminous, and mostly circumstantial. That introduced by appellee tended to show the following state of facts: That appellee, prior to April, 1901, had been in the employ of the appellant the Standard Oil Company for 15 or 20 years in the sale of oil, etc., in the city of Lexington and vicinity. At the date named Doyle resigned as its agent, and made an arrangement with the Wilburine Oil Works Company of Cincinnati, to furnish him oils for sale in that city and vicinity. He was furnished this oil in car load lots, and did a thriving business in the months of May, June, and a part of July. He sold or contracted one car load of the oils to M. F. Griffith, a party defendant to this action, who was in the business of selling and distributing oils under the name of the Brilliant Light Oil Company. Doyle sold other oils to wholesale and retail dealers. Some time in the month of June, one Bonnycastle, representing the Standard Oil Company, arrived in the city of Lexington to look after the business interests of the Standard Oil Company in Kentucky by increasing its sales of oil, by making for it new customers, and, if possible, to

regain the customers lost by reason of Doyle's connection with the Standard Oil Company having been severed. According to his statement, he first approached appellant C. B. Gilman, who was the oil inspector for Fayette county, for aid and advice. They concluded that the best thing to do was to furnish wagons and oil to one Fisher, who was a deputy oil inspector under Gilman, to sell and distribute oil in opposition to Griffith who was running the Brilliant Light Oil Company. Immediately after this Bonnycastle and one Guthrie, another agent of the Standard Oil Company, went to the house of Griffith, and asked him why he had quit buying oil of the Standard Oil Company, and Griffith told them that the company had not treated him right by not giving him a sufficient rebate. They then proposed that, if he would ship back the oil he had purchased from Doyle, they would then consider giving him a rebate of one cent per gallon, and also that, if he did not ship the oil back, that they would put wagons on the route in opposition to him, and ruin his trade. As a result of this and subsequent conversations, Griffith returned the oil he had purchased from Doyle, and formed a partnership with appellant Gilman, and they continued in partnership under the name of the Brilliant Light Oil Company for six months, when Gilman bought Griffith's half interest in the business. During this partnership and afterwards, Fisher, who was the deputy oil inspector, was secretary and treasurer of the concern. They received two wagons from the Standard Oil Company to be used in peddling the company's oils.

Appellee's evidence tends to show that they were furnished without charge, while appellants showed that they were purchased. These wagons were run by drivers of the Bril-

liant Light Oil Company in opposition to the appellee's wagons, and the proof of appellee shows that they obstructed, annoyed, and harassed the driver of appellee by following him, and sometimes getting in front of him, and stopping at every place where appellee's driver stopped; sometimes going into the residence with appellee's driver, and there offering to sell oil at a cheaper rate, and offering to give their oil without charge if they would not buy oil of appellee; in one or two instances cursing and abusing the driver of appellee. Sometimes they would stand for hours at one place awaiting the movement of appellee's driver. It was in proof that this conduct of the drivers of the Brilliant Light Oil Company was authorized, and directed by the appellant Gilman. Gilman stated that he did not authorize the abuse, nor any of the improper conduct, but stated that the Brilliant Light Oil Company had their cans deposited at different residences throughout the city, and they did direct the drivers to follow up the drivers of appellee, and see to it that the oils sold by the appellee be not deposited in their cans, and, if the people at the places where their cans were deposited did not desire to continue to trade with the Brilliant Light Oil Company, then to take up their cans; that the following up of appellee's driver was continued only for a day and a half. Appellee's proof shows that in some instances Gilman's drivers persisted in this conduct at places where the Brilliant Light Oil Company had no cans on deposit. Appellee proved that after he discovered that the Standard Oil Company had made an arrangement or contract with appellant Gilman, the oil inspector of Fayette county, to receive and dispose of its oils in competition with him, he then became fearful that his oils would not receive a fair inspection at the hands of his rival in business, and he had the next car load of oil run

across from Cincinnati to Ludlow, in Kenton county, and there inspected by the oil inspector of Kenton county, and then shipped on to him at Lexington. When this car reached Lexington, appellant and his deputy, Fisher, inspected it (Fisher first and afterwards appellant), and they reported that it was below the test of 130 deg. F. The Kenton county inspector reported that it was above the legal test. When appellees learned of the action of the appellant and his assistant, he, with a friend, took samples of this oil from four or five barrels to the A. & M. College and there had Profs. Scovel and Peters, expert chemists, make the test, and they found it above the legal test, and on the next day Gilman and R. J. O'Mahoney, an ex oil inspector for that county, took samples of this oil, and made tests themselves, and had the same chemists—Scovel and Peters—make tests of it, and they found that the oil would burn at 129 deg. F. Gilman then branded this car load of oil and condemned it as unsafe for illuminating purposes. Then Gilman caused his deputy, Fisher, who was also a deputy clerk, to issue a summons against appellee to appear before the court to show cause why he should not be punished for selling unsafe oils. At the time of the issual of this summons appellee was in the State of Illinois, visiting his father. On his return the summons was served, and on motion of defendant it was dismissed for the reason that it was illegally issued. Then appellant Gilman appeared before a magistrate and made affidavit, and caused a warrant to be issued against appellee, charging him with selling and offering to sell unsafe and condemned oils. On the trial of this case before County Judge Bullock the court selected two persons to select four or five samples of this condemned oil, and had them brought into court, and there had tests made in his presence by Gilman, O'Mahoney, B.

Tansey, the inspection for Kenton county, and Profs. Scovel and Peters. After hearing all the evidence and witnessing these tests, he dismissed the charge against appellee. After Gilman condemned this car load of oil, he reported verbally and in writing to the customers of appellee that the oils had been condemned, and that they must not buy it or sell it; that, if they did, they would be prosecuted for it. After this notice these customers of appellee did not sell any more of this oil, nor purchase any more oil from him. It was shown that the next car load of oil that was shipped to appellee was tested by Gilman and his assistant, and showed that it was above the legal test, as was reported by the inspector. Appellee introduced as a witness one Haffey, who was formerly in the employ of the Brilliant Light Oil Company, who stated that before this car load of oil was condemned by Gilman and his assistant he was present, and in a conversation which took place in the office of the Brilliant Light Oil Company, when Gilman said to the witness and Bonnycastle, the agent of the Standard Oil Company, that appellee had not treated him right in having this oil inspected in Kenton county, and trying to cut him out of his fees for inspection, and then remarked, "I don't think it will stand the test anyhow, and I will condemn it." Bonnycastle then said, "Condemn it, and we will see you through it." Appellee also introduced one W. C. Chipps, who stated that he was in the employ of the Standard Oil Company in Louisville at the time this competition arose between appellee and appellants, but soon thereafter ceased his connection with the company, and went to the city of Chicago, and engaged in the oil business with another company; that he returned to Louisville in August or September of the same year, and visited the office of appellant; that while he was there he remarked to Capt. Harrison, who was the manager

for the appellant for the State of Kentucky, "I understand that John Bonnycastle is now agent for the company at Lexington." He made an affirmative reply, and I then asked him how Mr. Doyle was getting along in the oil business there, and he replied, "It has been reduced to a minimum, as we made arrangements with some peddlers that were already there, and furnished them wagons and oil, and put them out, and that soon settled the matter." The proof also showed that during this contest for supremacy in the oil business at Lexington, Bonnycastle and Gilman were often together in private conversation, each visiting the other's office frequently. It was also in proof that Bonnycastle, about the time this oil was condemned, stated to one J. R. Dodd, a grocery merchant, who bought oil from appellee, that in the event he continued to buy oil from the appellee, he (Bonnycastle) would stop his wagon from delivering oil to him. He also told one Martin, another grocery merchant, that he could not buy oil from both parties. If he bought Doyle's oil, he could not get any more from the Standard Oil Company. This evidence—the statements of Bonnycastle to the customers of appellee—was not introduced for the purpose of showing illegal acts on the part of appellant company, for, as stated, it had the right to sell or refuse to sell its products to whom it pleased; but it was introduced to show the connection between it and those composing the firm of the Brilliant Light Oil Company, as a circumstance tending to show the conspiracy charged in the petition. It appears from all the testimony of appellee that he was injured and damaged in his business by unlawful means used by appellants.

While the evidence was conflicting upon all the questions at issue, and especially upon the issue of conspiracy, yet we are of the opinion that there was sufficient evidence upon

that point to authorize a submission to the jury. A conspiracy is a combination between two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. It is shown by the evidence that a purpose was accomplished by unlawful means, and when we consider the relation of the parties, their manifest motives of self-interest, the manner in which the purpose was carried out, and the declarations of the parties, it is reasonable to infer that this purpose was accomplished by concert of action and agreement of appellants.

Appellants complain that the court permitted statements made by appellant Gilman to be considered against himself and the appellant Standard Oil Company jointly, and statements made by the agents of the company, to be considered as against Gilman. This was done upon the idea that there were sufficient circumstances and evidence shown and introduced to authorize the jury to find that a conspiracy actually existed between appellants. The conspiracy being once established, or facts having been adduced which justify the inference of a conspiracy, the acts and declarations of each conspirator made pursuant to and in furtherance of the conspiracy are competent evidence against all. It matters not in either case, when one enters into or becomes a party to the conspiracy, how prominent or inconspicuous a part he may take in the execution of the unlawful purpose or the use of the unlawful means; he is responsible to the fullest extent for all that precedes as well as all that follows in connection with the plot, whether done by himself or by one or more of his associates. The only limitation upon the rule is that what is said and done must be said and done after the formation of the conspiracy, and in furtherance and in pursuance thereof. Of course, what may be said or done by any one of the conspirators after the completion of the pur-

pose for which the conspiracy was formed, can be used only against the one saying or doing it.

The main contentions of appellants are that the petition did not state a cause of action, and that the proof did not authorize the submission of the case to the jury. The lower court did not agree with them, and gave to the jury seven instructions, which were admirably drawn, and met every phase of the issues involved, and, if erroneous in any particular, it was because one or two of them may have been more favorable to appellants than they were entitled to. The court in these instructions did not authorize the jury to find any damages for appellee for any loss sustained, if any, by the breaking of his arrangement or contract with the Wilburine Oil Works Company, and therefore appellants have not cause for complaint upon this point.

The appellants also complain that the lower court erred in not suppressing the depositions of Carrie Shrader and W. C. Chipps, because they were transmitted from the examiner at Louisville, the place where they were taken, to the clerk of the Fayette circuit court at Lexington, where the action was pending, by the Adams Express Company. Section 583 of the Civil Code requires that the officer taking the depositions shall deliver them to the clerk of the court in which the action is pending, or send them by mail or private conveyance. If sent by private conveyance, the person by whom sent must make oath that they were not opened by him or any one else in their transit. In this case the officer taking the depositions made affidavit as to the individual agent of the express company to whom she delivered the depositions, and this agent, with all others of the express company into whose hands the depositions passed to the time they were delivered to the clerk of the Fayette circuit court, made affidavit that the depositions had not been open-

ed by them or any person in transit. The clerk made affidavit that the depositions reached him in a sealed envelope directed to him, as clerk, with an indorsement showing the style of the action, and contained depositions. This, in our opinion met the requirements of the Code, and is not in conflict with the opinion in the case of Breeding, etc., v. Stamper, 18 B. Mon., 175. This opinion construed section 646 of the Civil Code of 1854, which is unlike the present Code. The Code of 1854 did not authorize depositions to be transmitted by private conveyance.

It is shown by the bill of exceptions that after the case was submitted to the jury they returned to the courtroom, and asked for information, to-wit: "If the jury believe that three were in a conspiracy, can they find against two of them, and leave the other one out?" The court, in response to that question, said to the jury: "If the evidence in the case, under the law as given by the court, shows that three defendants were in a conspiracy, and that the plaintiff, under the law and facts in this case, is entitled to a verdict against all three, the jury should so find. The jury may, however, if they think that under the law and facts in this case such verdict is warranted, find a verdict against the different defendants in different amounts," etc. Appellants say that this last part is not responsive to the question asked by the jury, and was prejudicial to them. We do not so understand it. The court stated an undoubted proposition of law, as had already been stated in the fifth instruction, and this oral restatement of the proposition by the court could not have been prejudicial to the defendants' rights; at least not to such an extent as would authorize a reversal of the case.

The objection to and criticism of the argument of appellee's counsel in his closing remarks to the jury are not well taken. The effects of the remarks objected to amounted

only to his opinion of the great desire of the Standard Oil Company to relieve itself of a competitor in the oil business in the city of Lexington.

Appellants also complain of the amount of inequality of the verdict, and claim that it is an evidence of passion and prejudice on the part of the jury. It was within the province of the jury to determine from the evidence who was most in fault, and who would be benefited most by the formation and success of the conspiracy, and it is reasonable to presume that this accounts for the inequality of the amounts adjudged against appellants. If it be true, as the jury seems to have determined, that this conspiracy was formed, and in pursuance thereof the appellants fraudulently caused appellee's oils to be condemned, and willfully reported the oils to be below the legal test, when they knew or had reason to believe they were not below the test, and had appellee arrested upon the false charge of selling condemned oil, and obstructed, harassed, and annoyed appellee's drivers when delivering his oil, for the purpose of injuring and driving appellee out of the business of selling oils, we can not say that the verdict is excessive.

Perceiving no error prejudicial to the substantial rights of appellants, the judgment of the lower court is affirmed.

Petition for rehearing by appellant overruled.