### Bell v. Aetna Oil Service, Incorporated, et al.

(Decided February 19, 1932.)

472

GILBERT, PICKETT & KINSOLVING and JOHN D. BUCKNER for appellant.

HUMPHREY, CRAWFORD & MIDDLETON, and TODD & BEARD for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Joseph B. Bell, brought this suit in the Shelby circuit court against the Ætna Oil Service, a Kentucky corporation, and the Crume-Hundley Oil Company, a partnership composed of John Crume, J. W. Hundley, and W. T. Davis, to recover $25,000 damages. He alleged in his petition, in substance, that the defendants entered into a conspiracy to destroy his business, and, by wrongful acts committed pursuant to such conspiracy, had injured his business and damaged him in the amount claimed. Upon the trial of the case the court, at the conclusion of plaintiff's evidence, instructed the jury peremptorily to find for the defendant Ætna Oil Service, on the theory that the evidence failed to show a conspiracy or that the Ætna Oil Service had committed any of the wrongful acts alleged in the petition. The case then proceeded as to the other defendants, and was submitted to the jury on the question as to whether they had used any of plaintiff's equipment without his consent. The jury returned a verdict in favor of the plaintiff against Crume, Hundley, and Davis, doing business as the Crume-Hundley Oil Company, for $650. From the judgment entered thereon, the plaintiff has appealed, and now argues that the trial court erred in limiting the recovery to the rental value of the equipment owned by plaintiff and used by the Crume-Hundley Oil Company and in refusing to submit to the jury the question as to whether or not all of the defendants were guilty of con-

spiracy and unfair competition resulting in damage to the plaintiff.

Prior to August 1, 1929, Ernest Fullenwider was engaged in the business of selling and distributing oil and oil products in Shelby and adjoining counties. The business was conducted in the name of the Fullenwider Oil Company. Fullenwider owned a lot in Shelbyville on which he had erected oil tanks and other equipment. He also owned a number of underground tanks and pumps attached thereto, which were located on the premises of his various customers. He delivered gasoline and other oil products to these customers by means of tank trucks. Appellees John Crume and J. W. Hundley had been employed by Fullenwider for a number of years, and each drove a truck on a route that had been assigned to him. Fullenwider died on August 1, 1929, and the Shelby County Trust & Banking Company qualified as the administrator of his estate. The administrator applied to the appellee Ætna Oil Service, which was engaged in the business of refining and distributing oil and oil products, for assistance in appraising Fullenwider's properties. In response to this request, it sent to Shelbyville W. T. Davis, one of its engineers, to inspect the properties.

The properties were advertised to be sold on August 27, 1929. Before the sale, the administrator sought to interest Davis in the purchase of the Fullenwider business. Davis, Crume, and Hundley decided to purchase the properties, provided they sold for $20,000 or less. The Ætna Oil Service agreed to finance them to that extent, and they agreed to handle its products exclusively. The properties were sold as a whole at public auction, and were purchased for $20,600 by the appellant, Joseph B. Bell. The Crume-Hundley Oil Company was the contending bidder. Crume, Hundley, and Davis had formed a partnership and arranged to engage in the oil distributing business, handling the products of the Ætna Oil Service, regardless of the result of the sale of the Fullenwider properties. Crume and Hundley continued to work for the Fullenwider Oil Company until the sale of its properties on August 27, 1929, but immediately after the sale, with Davis as a partner, began doing business as the Crume-Hundley Oil Company. They had leased two tank trucks from the Ætna Oil Service to be used by them until they could obtain delivery of two new trucks which they proposed to and did later purchase.

They at once began delivering the products of the Ætna Oil Service to patrons obtained by them. Some of these patrons were former patrons of the Fullenwider Oil Company and others were new customers. The partnership later purchased a lot at Shelbyville and placed thereon storage tanks and other equipment required in the oil distributing business. On the day they began doing business, Crume, Hundley, and Davis executed to a bank two notes aggregating $5,000 which the Ætna Oil Service signed as surety. In December, 1929, they executed and delivered to the Ætna Oil Service a mortgage for $25,000 on all their real and personal property.

On September 24, 1929, appellant brought this suit in the Shelby circuit court. He charged in his petition that the Ætna Oil Service and Crume, Hundley, and Davis entered into a conspiracy to destroy the business which he had purchased from the Fullenwider estate, and that, pursuant to such conspiracy, by misrepresentation and fraud, they had induced many former customers of the Fullenwider Oil Company to cease doing business with the plaintiff and to purchase the products of the Ætna Oil Service through the Crume-Handley Oil Company, and that by unfair methods they had induced the former employees of the Fullenwider Oil Company to refuse to work for him and to enter the employ of the Crume-Hundley Oil Company. It was further charged, in substance, in the petition that the Crume-Hundley Oil Company had no actual existence, and that Crume and Hundley were employed by the Ætna Oil Service.

A large amount of proof was taken, but none of it substantiated the averments of the petition. Many of the former customers of the Fullenwider Oil Company were introduced as witnesses by the plaintiff. Without exception, they denied that either Crume or Hundley resorted to unfair methods in soliciting their business. It appears that in some instances both Crume and Hundley informed the customers of the Fullenwider Oil Company that they had formed a partnership and expected after the sale on August 27, 1929, to distribute the products of the Ætna Oil Service, and that they were going to attempt to purchase the property at the sale but whether they succeeded or failed, they would in either event handle the products of the Ætna Oil Service. After the sale, they informed these customers that they had failed to purchase the property, but that they were

distributing oil and oil products, and they solicited the business of all persons with whom they had been dealing as employees of the Fullenwider Oil Company. There is no testimony that they made any statement derogatory to appellant or to the products which he handled. On the contrary, the evidence shows they were attempting to establish themselves in business and were using no unlawful means in accomplishing their purpose. It does not appear that the Fullenwider Oil Company had contracts with its customers to use its products over any stated period of time, but it is conceded that they could cease the use of its products at any time. It is customary when a person ceases to handle the products of an oil company whose equipment has been placed on his premises for the succeeding oil company to replace the equipment with its own and return the old equipment to its owner. In the case of underground tanks, it is the custom either to deliver a new tank to the owner in the place of the one in the ground or to pay to the owner its value. There was some evidence that the Crume-Hundley Oil Company put its oil products in tanks owned by appellant, but the most that appellant may claim on this account is the rental value of the equipment so used.

The Utopian era when the amenities common to the social relations of life shall be applied to the conduct of business has not yet arrived. Business, under the present system, is competitive in its nature, and, unless one's business has been affected to his detriment and loss by the use of unlawful and fraudulent methods by a competitor, the law will not intervene. Each has the legal right to solicit business and to sell to the other's customers, and he will not be liable to a competitor whose business has been adversely affected so long as he does not employ unlawful means. What means are unlawful, when employed by a competitor in business, are set out in Standard Oil Co. v. Doyle, 118 Ky. 662, 82 S. W. 271, 273, 26 Ky. Law Rep. 544, 111 Am. St. Rep. 331, cited and relied on by appellant, but, as was said in that case, "Undoubtedly one man may by fair methods compete with a rival until by sheer force of competition, by underselling or outbidding him, his own business is built up to the detriment and ruin of his rival. The damage in such case is in the eye of the law damnum absque injuria. But a different case is presented where one seeks not only to build up his own business at the expense of a

rival's, but to impair, and if possible, destroy, that rival's business by the use of unlawful means by saying and doing that which he has no lawful right to say and do, in so far as it works loss and damage to his rival.''

In the Doyle case the plaintiff alleged and proved that the defendants entered into a conspiracy to and did ruin his business by making false representations to his customers and by threats and intimidation. The defendants in that case also harassed the plaintiff's employees by following and interfering with them. In Nims on Unfair Competition (3d Ed.), sec. 3, it is said:

> "The law of unfair competition might seem to have the effect of limiting the rights enjoyed by all men to trade freely with each other. But the restrictions imposed by it are not imposed upon traders alone, but equally on all other citizens. The right to trade is not an absolute right, but a qualified one. Whether a man be a trader or not he is not justified in damaging another's business or profession by fraudulent methods, by threats, interference with contract, libel or slander of goods, obstruction, or unfair methods of any sort. It is the policy of the law to encourage fair trade in every way."

This, in substance, was the doctrine upon which the decision in the Doyle case, supra, was rested. The appellant, however, is not entitled to relief under this wholesome doctrine, since he failed to prove that the appellees had entered into a conspiracy to ruin his business by unlawful means or had employed unlawful means resulting in damage to him.

Some point is made of the fact that the employees of the Fullenwider Oil Company refused to work for appellant after he became the owner of the business, but did begin working for the Crume-Hundley Oil Company. These employees testified that they changed of their own volition and because they had been associated with Crume and Hundley, with whom their relations had been friendly. They were under no obligations to work for the appellant, and the Crume-Hundley Oil Company was acting within its rights in employing them. There was no evidence of a conspiracy to injure appellant's business by unlawful means, and the trial court properly refused to submit this question to the jury.

Appellees Crume, Hundley, and Davis argue that the judgment should be reversed because there was no evidence to support the verdict, and also because the pleadings did not authorize a submission of the question of rentals. These appellees prayed and were granted an appeal in the lower court, and prepared and filed a bill of exceptions, but they have not perfected their appeal in this court, nor have they prosecuted a cross-appeal. No statement of appeal has been filed by them.

The plaintiff below prosecuted an appeal, and the only statement of appeal filed names the plaintiff below the appellant and the defendants below the appellees. It follows that on the record before us the judgment must be affirmed, but this is without prejudice to the right of Crume, Hundley and Davis to prosecute an appeal hereafter, if they so desire.

Judgment affirmed.