ANTONY S. RUDDY v. UNITED ASSOCIATION JOURNEYMEN PLUMBERS, GASFITTERS, STEAMFITTERS AND STEAM-FITTERS' HELPERS OF THE UNITED STATES AND CANADA, LOCAL No. 24, AND WILLIAM RYAN.

Argued February 16, 1909—Decided February 15, 1910.

There was testimony that plaintiff was discharged successively by two employers, because each of these employers were successively warned by an agent of the defendant, a labor union, that if the employer kept the plaintiff in his service, all members of the union would quit his employment in a body. The purpose of this warning was to impress upon the employer the danger that he would be stripped of his ability to complete certain contracts unless he discharged the plaintiff, and the purpose was ultimately to coerce the plaintiff, who was a member of a local in another union, to join the defendant union. *Held,* that the finding of the court, sitting as a jury, that the plaintiff was entitled to recover against the union for inducing his discharge, was not error.

---

On appeal from a judgment of the Second District Court of Newark.

Before Justices REED, TRENCHARD and MINTURN.

For the plaintiff and appellee, *Samuel Press* and *Harry Kalisch*.

· For the defendants and appellants, *Beecher & Bedford*.

PER CURIAM.

This case was tried before a District Court without a jury. The court has sent up the stenographer's notes taken on the trial, with a general finding in favor of the plaintiff. The question is whether the trial court could find in any rational view of the evidence, a situation which would support this finding.

Mr. Ruddy, the plaintiff, was a plumber, and was employed as such by one William Jacobi, who discharged Mr. Ruddy. Afterward, Mr. Ruddy was employed by F. J. Sturm, and was also discharged by him. The plaintiff claims that he was discharged in both instances because one William Ryan, the business agent of Local Union No. 24 of the United Association Journeymen Plumbers, Gasfitters, Steamfitters, and Steamfitters' Helpers of the United States and Canada, acting for that association, caused Ruddy's employers to discharge him.

There is testimony to show that Ruddy, while working for Mr. Jacobi, was approached by Ryan, who was admittedly the agent of the association, and that Ryan asked Ruddy to join Local No. 24. Ruddy told Ryan that he already belonged to one local union, and did not see why he should make any change. Ryan then saw Jacobi and told him that he would have to discharge non-union men. Jacobi then discharged Ruddy, and Ryan sent Jacobi union men to take Ruddy's place. Ryan said to Jacobi: "We have union men and you should have union men, and Mr. Ruddy is not a union man; and to harmonize matters you ought to employ union men."

Again, when Ruddy was afterward working for Sturm, Ryan went to see Sturm and told him that he had a non-union man working for him. Sturm told Ryan that the man belonged to Local No. 5, and Ryan replied that there were objections; that the other men would not work with Local

No. 5. Mr. Sturm took Ruddy off the job on which he was then working, and put him at some jobbing work elsewhere. Ryan came to see Mr. Sturm again and said that he, Sturm, would have to lay off that man—that he was not a union man, that is, he did not belong to their local. Sturm said to him, "This job is so near completed I would like to have him finish this job." Ryan replied, "I will get you a good man." Sturm promised to discharge Ruddy the next day, when he had finished the job, and he did discharge him.

I think that from the testimony the court could draw the inference that there was a threat in two instances—that unless Ruddy was discharged, the members of Local No. 24 would in a body leave the services of these two employers. The threat did not consist of a statement merely that members of Local No. 24 would not work with non-union men, but it was a distinct warning that Ruddy must be discharged, or if he was not discharged, the employers would be left without the means of executing their contracts.

There was testimony that Ruddy was pursued from one employer to another with a determination to force him into membership with Local No. 24 and that by this pursuit it was hoped to strip him of his means of earning the wages of a mechanic, unless he acceded to the demands of the association.

The court could draw the inference from the testimony that there was a general agreement, that upon information received by the business agent, the walking delegate, or the members of the union, that a non-union man was at work on the same job, that the other members would quit that work. By this combined understanding, there was put in the hands of the general business agent a power not merely to call out the union members, but to call them out for the express purpose of compelling the discharge of other employes.

From the testimony it could be inferred by the court that this power was exercised in the present case, and resulted in the discharge of the plaintiff.

These conditions being legitimately inferable by the court, it was justified in finding a judgment in favor of the plaintiff.

*Brennan* v. *United Hatters,* 44 *Vroom* 729; *Berry* v. *Donovan,* 188 *Mass.* 353; *Perkins* v. *Pendleton,* 90 *Me.* 166; *Lucke* v. *Clothing Cutlers', &c., Assembly,* 77 *Md.* 396; *London Guarantee, &c., Co.* v. *Horn,* 206 *Ill.* 493.

Judgment is affirmed.