## Chambers v. Probst.

(Decided November 16, 1911.)

Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Employe—Discharge of by Employer Because of False and Malicious Statements of Another—Pleading.—In an action by an employe to recover damages alleged to have been sustained as a result of his discharge, his petition setting out that he was discharged as a result of the false and malicious statements made by Probst to his employer, relative to the manner in which he had discharged his duties, stated a cause of action.

2. Actionable Wrong—Unlawful Interference With One's Right to Labor.—It is an actionable wrong to unlawfully interfere with one's right to labor, and it is unlawful to make to an employer false and malicious statements concerning the manner in which the employe discharges his duties.

L. FRANK WITHERS for appellant.

JOSEPH SELLIGMAN and ALFRED SELLIGMAN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

W. E. Chambers was in the employ of the Louisville & Nashville Railroad Company as a day laborer. He was a watchman at one of the street crossings of said company in the city of Louisville. He lost his position with the company, and, conceiving that his discharge was brought about by the unwarranted, unlawful and malicious intermeddling of one W. G. Probst, he instituted a suit against him to recover damages alleged to have been sustained by reason of his discharge. In his petition he in substance alleged that, by reason of false and malicious statements made by Probst to his employer, relative to the manner in which he had dis-

charged his duties as watchman at the public crossing, he had lost his position. A demurrer was sustained to this petition and plaintiff's suit dismissed. He appeals, and here raises the question, is it an actionable wrong to unlawfully interfere with one's right to labor?

In different forms this same question was before this court in Chambers & Marshall v. Baldwin, 91 Ky., 121; Bourlier Bros. v. Macauley, 91 Ky., 135; Brewster v. Miller's Sons Co., 101 Ky., 368; Baker v. Metropolitan Life Ins. Co., 23 Rep., 1174, and Standard Oil Co. v. Doyle, 118 Ky., 662. It is insisted for appellee that the ruling of this court in all of the foregoing cases, except that of Standard Oil Company v. Doyle, justifies and supports the ruling of the trial judge, and that the question involved in that case is readily distinguishable from that here presented. Appellant relies upon the principles announced in these cases, and particularly in Standard Oil Co. v. Doyle, to support a reversal.

Considering these cases separately, we find that Baker v. Metropolitan Life Insurance Company has no application whatever, because that was a suit, not against an intermeddler, but against an employer. Plaintiff there sought to recover damages from his employer because of his discharge. The court held that, as the employment was for no definite period, defendant company had a right to discharge plaintiff, and that, having this right, the reason for its exercise could not be inquired into.

Chambers & Marshall v. Baldwin, decided in 1891, grew out of the following state of facts: Chambers & Marshall purchased of Wise a crop of tobacco, to be delivered in good order during that season. Thereafter Wise sold and delivered the tobacco to Cooper & Baldwin and notified Chambers & Marshall that he would not deliver to them and that they might treat the contract with him as at an end. Thereupon Chambers & Marshall brought suit against Baldwin to recover damages alleged to have been sustained by them by reason of the breach by Wise of his contract with them. They alleged in the petition that Wise was induced by Baldwin to break his contract, and that in so inducing him to act Baldwin acted maliciously and with a purpose of injuring plaintiffs. The petition did not charge that false representations were made to Wise to induce him to break the contract. In disposing of that litigation upon appeal here, this court said:

"Two questions arise on demurrer to the petition: First, whether one party to a contract can maintain an action against a person who has maliciously advised and procured the other party to break it; second, whether an act lawful in itself can become actionable solely because it was done maliciously."

After discussing at length the authorities bearing upon this question, the opinion, in conclusion, states:

"But as Wise was not induced by either force or fraud to break the contract in question, it must be regarded as having been done of his own will and for his own benefit; and his voluntary and distinct act, not that of appellee, being the proximate cause of damage to appellants, they, according to a familiar and reasonable principle of law, can not seek redress elsewhere than from him."

It will be observed that in this opinion the court's decision is made to turn upon the fact that neither fraud nor force were resorted to to induce Wise to break his contract.

The case of Bourlier Bros. v. Macauley, 91 Ky., 135, decided shortly after the case of Marshall & Chambers v. Baldwin, grew out of this state of facts: Bourlier Brothers had a contract to have Mary Anderson, a dramatic performer of great reputation, play at their theater on a certain date. They went to much expense in making preparation for her performance. She broke her contract, and Bourlier Brothers, conceiving that she had been induced to do so by Macauley, the owner of a rival theater, where she had agreed to play upon the very dates upon which she was to play at their theater, brought suit against Macauley for the damages which they had sustained by reason of the breach of the contract with Mary Anderson. In holding that they were not entitled to recover, the court said that the same questions were raised for determination in the case of Chambers & Marshall v. Baldwin, supra, that the facts in that case controlled this, that the breach of contract was not brought about by either fraud or coercion, but was the voluntary act of the manager of the actress, and that plaintiffs were not entitled to recover.

In Brewster v. Miller's Sons Co., 101 Ky., 368, the plaintiff sought to recover damages of the defendant because the latter had induced other undertakers to refuse to accept employment from plaintiff. It appears that plaintiff was indebted to defendants for services ren-

dered him in the burial of his father, and that when his
wife died he was still owing them for his father's fun-
eral, that they declined to again serve him because of the
existence of this indebtedness, and he charged in his pe-
tition that they induced others to refrain from render-
ing him this service, to his damage. In disposing of the
question on appeal here, this court said:

"A party may engage in the grocery business, sell-
ing necessaries of life, and a hungry, starving man
might call at his place of business and seek to buy such
articles of food as he needs, and whilst we would say it
was inhuman for the groceryman to refuse to sell him,
yet it could not be said that his refusal was unlawful,
and that a cause of action could be maintained against
him for such refusal. When one desires to bury his
dead, it may be an unfeeling act for an undertaker to re-
fuse to furnish necessary material and necessary ser-
vices to accomplish it, still his refusal to do so does not
impose any legal liability upon him. Undertakers are
approached by those in great bereavement who desire
their services to inter the dead. Under such circum-
stances they do not feel disposed to demand in advance
compensation. Regard for the feelings of those so be-
reaved forbids that they do so. However, if one has on
a previous occasion received the services of the under-
taker, and his material, and has refused or failed to pay
the bill, it is certainly not unreasonable to refuse to per-
mit him to increase his indebtedness or to render him
services. To afford mutual protection against such per-
son it is not unlawful for the undertakers of the com-
munity to associate themselves together and agree to re-
fuse to render a like service to one who has refused or
failed to pay such expenses in the past to some member
of the association."

Here, again, it will be observed, the court rested its
opinion upon the idea that defendant had not resorted
to any false statement or coercion by which the other
undertakers were prevented from rendering to plaintiff
the services desired. In each of the opinions from which
we have quoted the inference is easily deducible that the
court would have reached a different conclusion had it
appeared that the contract had been breached by reason
of the exercise of either fraud or force over the party
breaking it by the party sought to be charged with hav-
ing procured the breach.

A case more nearly akin to that under consideration

is Standard Oil Co. v. Doyle, 118 Ky. 662. It was there charged that Gilman and Griffith, composing the firm known as the Brilliant Light Oil Co., and the Standard Oil Co., had maliciously, unlawfully and wickedly conspired and confederated together to alienate and estrange the customers and patrons of appellee, to ruin, oppress and impoverish the appellee, and drive him out of the business of selling and contracting for the sale of oils, gasolines, etc., and deprive him of all benefits and profits under a contract which he had with a certain oil works company. It charged that the various acts done by appellants were in pursuance of a conspiracy entered into between them for the purpose of destroying his business, and that by reason thereof his business had been destroyed and his contract with the oil works company cancelled, to his material damage. The trial court held the petition good. Issue was joined and the case tried out before a jury, with the result that the plaintiff recovered a verdict against each of the defendants. Upon appeal here, in an elaborate opinion by Judge Nunn, this court said:

"The petition in apt words alleged the conspiracy, the means used to effectuate the purpose and the resulting loss to appellee. The remaining matter to be determined is whether the alleged means used to injure or drive appellee out of business were lawful or unlawful. If lawful, the petition did not state facts sufficient to constitute a cause of action; if unlawful it did, and the lower court did not err in overruling appellant's demurrer. That part of the petition which describes the means used to effectuate their purpose, is as follows: 'By wanton and malicious interference with plaintiff's business and the conduct thereof in obstructing, harassing and annoying plaintiff's servants and employes while engaged in the discharge of their respective duties in selling and distributing oils, etc., to plaintiff's customers and patrons, and by willfully enticing, persuading and otherwise unfluencing such servants and employes to leave plaintiff's employ, against the will and consent of plaintiff; by threatening certain wholesale customers of plaintiff to shut them up in their business if they continued to purchase and deal in plaintiff's oils, etc.; and by threatening both wholesale and retail customers of plaintiff, that it (the Standard Oil Company, aforesaid) would refuse to sell them oil, gasoline and other commodities dealt in by said defendant as long

as they continued to purchase such articles, or any of them, from plaintiff, by causing and procuring false and injurious reports concerning plaintiff and his business to be circulated in and about the City of Lexington; and published in certain of the daily newspapers of the city; by causing and procuring plaintiff to be arrested on various charges of violating the ordinances of said city, and the criminal and penal laws of the City of Lexington and Commonwealth of Kentucky, and to be prosecuted therefor; and by divers and sundry wrongful acts to estrange and alieniate the acquaintances, customers and patrons of the plaintiff, to ruin and impoverish and oppress the plaintiff, and drive him out of the business of contracting for the sale of oils, gasoline, etc. It was most assuredly unlawful to obstruct, harass and annoy appellee's employees when engaged in the discharge of their duties in selling and distributing oils to appellee's customers; to threaten customers of appellee's to shut them up in their business if they continued to deal in appellee's oils; to cause and procure false and injurious reports concerning appellee and his business to be circulated in Lexington and vicinity; and to procure appellee's arrest and prosecution on false charges in connection with his business in the sale of oil for the purpose of estranging and alienating the acquaintances, customers and patrons of appellee.''

In this case the opinion of the court turns upon the question as to whether or not the means employed were lawful, no inquiry being made into the motive. The means being found to be unlawful, it was held that the petition stated a cause of action.

The only difference between that case and the case under consideration is that, in the Doyle case several unlawful acts were grouped together as constituting a cause of action, whereas, in the present case only one unlawful act is relied upon. The difference is in degree merely, not in kind, and if Probst, in making false statements to appellant's employer as to the way and manner in which he was discharging his duties, was guilty of an unlawful act, no distinction can be drawn between this case and the Baker case.

Courts of last resort generally agree that it is an actionable wrong to interfere with one's right to labor without justification. The difference arises out of a determination of what acts are justifiable and what not. It is universally agreed that any interference with the

right to labor which is the result of competition is justifiable, and although injury or damage may result from such interference, no cause of action exists to the party aggrieved, because while one has the right to the peaceable and undisturbed enjoyment of his right to labor, and is to be protected in same, this protection only goes to the extent of guarding it against unlawful interference. It will not be protected against competition, for such a course would be to create a monopoly, a condition looked upon as injurious, not only to the individual, but to the growth and development of the country as well. It was upon this idea that the acts complained of in the cases of Chambers & Marshall v. Baldwin, and Bourlier Brothers v. Macauley, supra, were decided. Chambers & Marshall and Baldwin were engaged in the same business, the purchase of leaf tobacco; Bourlier and Macauley operated rival theaters; and in each case the basic principle upon which the opinion rested is, that as the acts complained of were the result or outgrowth of competition, no ground of complaint was afforded the aggrieved party, although in each of those cases it was inferentially held, if not expressly decided, that if the injury had been brought about by the exercise of either fraud or force a different case would have been presented, the court evidently proceeding upon the idea that even those engaged in competitive business may not, in the prosecution of their business, resort to other than legitimate means to outstrip their rivals. Appellant and appellee were not competitors in business. Appellee was not seeking the employment held by appellant. The demurrer to the petition confesses the truth of the allegation that appellant's discharge was brought about through the false and malicious statements made by appellee to his employer. They were wantonly made, without excuse other than to satisfy a spiteful or revengeful disposition. If it should be held that such an act was not unlawful, then appellee could pursue appellant and secure by such questionable means his discharge from any employment which he might hereafter receive, and totally deprive him of an opportunity of making a living by the exercise of his right to labor. To so hold would be to place it within the power of the wealthy and influential to reduce to a state of beggary anyone against whom a grievance, real or imaginary, might be entertained. Such a position has but to be stated to show how

utterly untenable it is.   The acts complained of are clearly unlawful.

It is next insisted for appellee that as the employment was for an indeterminate period no recovery can be had.  This identical question was decided in W. D. Chipley v. Wayne K. Atkinson, 23 Fla. 206, wherein the Court, after reviewing all the authorities in this country and in England upon this subject, concludes as follows:.

"From the authorities referred to in the last preceding paragraph, and upon principle, it is apparent that neither the fact that the term of service interrupted is not for a fixed period nor the fact that there is not a right of action against the person who is induced or influenced to terminate the service or to refuse to perform his agreement, is of itself not a bar to an action against the third person maliciously and wantonly procuring the termination of or a refusal to perform the agreement. It is the legal right of the party to such agreement to terminate it, or refuse to perform it, and in doing so he violates no right of the other party to it, but so long as the former is ready and willing to perform, it is not the legal right, but is a wrong on the part of a third party to maliciously and wantonly procure the former to terminate or refuse to perform it.  Such wanton and malicious interference for the mere purpose of injuring another is not the exercise of a legal right. Such other person who is in employment by which he is earning a living or otherwise enjoying the fruits and advantages of his industry or enterprise or skill, has a right to pursue such employment undisturbed by mere malicious or wanton interference or annoyance."

And the Supreme Court of Massachusetts, in the case of Berry v. Donovan, 188 Mass. 353, in passing upon this identical question, said:

"The fact that the plaintiff's contract was terminable at will, instead of ending at a stated time, does not affect the right to recover. It only affects the amount that he is to receive as damages."

These decisions upon this point are supported by Perkins v. Pendleton, 90 Me. 166, Lucke v. Clothing Cutters and Trimmers Assembly, 77 Md., 396, and London Guarantee & Accident Co. v. Horn, 206 Ill. 493.  We are of opinion that appellee may not excuse himself from the result of his unlawful act because appellant's employment was for an indeterminate period.  This fact affords him no ground of relief.

We are of opinion that it is an actionable wrong to unlawfully interfere with one's right to labor, and that it is unlawful to make to an employer false and malicious statements concerning the manner in which the employee discharges his duties. The petition states a cause of action.

Judgment reversed and cause remanded for further proceedings consistent herewith.