# CASES DETERMINED

AT THE

# August Term, 1914.

JOHNSON, Respondent, vs. ÆTNA LIFE INSURANCE COMPANY, Appellant.

*March 17—October 6, 1914.*

*Unlawful interference: Causing discharge of employee: Malice: Justification: Trial: Questions for jury: Doubtful inferences: Positive testimony.*

1. Where, without justification, one person causes the employee of another to be discharged, he becomes liable in damages to such employee.

2. Malicious motives on the part of the person causing such discharge would permit the recovery of punitory damages if he acted without justification; but if his act was justified malice would not make it actionable.

3. An insurance company which had insured the employer against liability was not justified in causing the discharge of an employee who, after being injured, had been retained in his employment, where the purpose was to deprive the employee of his earning power so that he could not successfully carry on an action which he had brought against the employer, and which the insurance company was defending, to recover damages for his injury.

4. Where unimpeached witnesses testify from accurate and positive knowledge of the facts concerning which they speak, their evidence is not controverted so as to make a jury question by indefinite statements, by mere negative testimony, or by doubtful inferences that might be drawn from facts concerning which there is no dispute.

5. Thus, although plaintiff's evidence showed that defendant (an insurance company which had insured plaintiff's employer against liability and was defending an action brought by plaintiff against said employer for personal injuries) suggested to

the superintendent of the employer that plaintiff be discharged and he was discharged shortly thereafter, the inference which might be drawn from those facts was wholly overcome, so as to leave no jury question, by the positive testimony of the general superintendent and of the president of the employer, who stood as unimpeached and disinterested witnesses, to the effect that the discharge was ordered by the president, that he knew nothing of the suggestion made by the insurance company, and that such suggestion had nothing whatever to do with the discharge.

6. Such witnesses, in testifying to the cause of plaintiff's discharge, were testifying to a fact pure and simple.

TIMLIN and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

On June 28, 1910, plaintiff, while in the employ of the Simmons Manufacturing Company, suffered an injury to his left eye. Thereafter he commenced an action against said company to recover damages for the injury sustained. The defendant herein appeared in that action (which is still pending) for the Simmons Manufacturing Company, in accordance with a contract of indemnity with such company. As soon as plaintiff recovered from his injury he resumed his employment and continued it until March, 1911, at which time he was discharged. This action was brought against the defendant to recover damages alleged to have been sustained by reason of the action of the defendant in procuring the discharge of plaintiff from his employment because of his refusal to settle his claim in accordance with the terms of the defendant insurance company. The answer denied the material allegations of the complaint. The evidence tended to show that a short time before the plaintiff was discharged an agent of the defendant called upon Mr. Vincent, the general manager of the Simmons Manufacturing Company, and suggested to him that the plaintiff be discharged. Following this interview and on February 28, 1911, the agent of

the defendant wrote a letter addressed to "Mr. W. W. Vincent, The Simmons Mfg. Co., Kenosha, Wis.," as follows:

"Dear Sir: Confirming our interview this morning regarding the above entitled matter, I wish to call your attention to the fact that this injured has brought suit against your company, and the further fact that he is still in your employ. This situation, while it is one which is immaterial to us, and in no way affects us or affects the question of the injured's right to recover, is one which is full of possibilities of trouble to your company for the following reasons: It has the tendency to encourage litigation against your company by your employees for the reason that they feel that they can 'take a chance' at obtaining a judgment after they are injured and still lose nothing in the way of being out of employment. It furthermore gives them the opportunity to collect the necessary money with which to fight a lawsuit; in other words, you are furnishing them 'sinews of war' with which to fight yourself. While it is true, as you suggested, that the effect of showing that the company considers the matter one which they are fighting as a matter of principle; and that because they are right, the company is not small enough to consider the fact that a man is fighting it a reason for discharging him, still these facts could not under our rules of evidence be shown at the time the matter is tried for the reason that they are irrelevant. We wish merely to call this fact to your attention, so that you may consider whether it is in accord with your best interests that your employees get the idea that they can undertake to collect damages from you and at the same time remain in your employ, earning money with which to injure you. As for ourselves, as I have stated to you, we are not interested one way or the other. It is entirely immaterial to us, and we make no recommendations one way or the other. We merely submit the matter to your good judgment."

Simmons testified that he was not present at the interview with the defendant's agent; that he never saw the letter until a short time before the trial; that he knew nothing of the request made by the defendant; and that he ordered the plaintiff discharged on his own motion and not because of any ac-

tion taken by the defendant. His evidence was corroborated by the general superintendent, Vincent. Other facts will be more fully stated in the opinion.

The jury answered all of the questions in the special verdict in favor of the plaintiff, and among other things found that plaintiff's discharge was proximately caused by the defendant. The jury assessed the plaintiff's compensatory damages at $294 and his punitory damages at $5,000. In lieu of the granting of a new trial plaintiff was permitted to remit $4,000 punitory damages, and judgment was entered on the verdict as amended.

For the appellant there were briefs by *Harper & McMynn,* attorneys, and *J. E. Dodge,* of counsel, and oral argument by *R. N. McMynn.*

For the respondent there was a brief by *William L. Tibbs* and *Rossiter Lines,* and oral argument by *Mr. Tibbs.*

The following opinion was filed May 1, 1914:

BARNES, J. This appeal presents two questions: (1) On the facts found by the jury, was the plaintiff entitled to judgment? (2) Has the finding of causal connection between the acts complained of by the plaintiff and his discharge sufficient support in the evidence?

1. The first question must be resolved in favor of the plaintiff. We agree with defendant's counsel that if their client was justified in doing what it did in the way of procuring *Johnson's* discharge, the fact that it acted from malicious motives would not give a right of action. The presence of malice would permit the recovery of punitory damages, if defendant acted without justification, but would not in itself create a cause of action where none existed without it. Malice makes a bad case worse, but does not make wrong that which is lawful. This question is definitely set at rest by a number of decisions in this court. *Metzger v. Hochrein,* 107 Wis. 267, 83 N. W. 308; *Sullivan v. Collins,*

107 Wis. 291, 299, 83 N. W. 310; *Marshfield L. & L. Co. v. John Week L. Co.* 108 Wis. 268, 274, 84 N. W. 434; *Madden v. Kinney,* 116 Wis. 561, 569, 93 N. W. 535; *Huber v. Merkel,* 117 Wis. 355, 363, 94 N. W. 354; *Loehr v. Dickson,* 141 Wis. 332, 335, 124 N. W. 293. But the plaintiff had the right to dispose of his labor wherever he could to the best advantage. This is a legal right entitled to legal protection. Such right could be interfered with by one acting in the exercise of an equal or superior right. As against all others, the plaintiff was entitled to go his way without molestation, and if any one assumed to meddle in his affairs he did so at his peril. There is practically little conflict in the cases on this point. *Walker v. Cronin,* 107 Mass. 555, 564; *Plant v. Woods,* 176 Mass. 492, 57 N. E. 1011; *Moran v. Dunphy,* 177 Mass. 485, 59 N. E. 125; *Berry v. Donovan,* 188 Mass. 353, 74 N. E. 603; *Lopes v. Connolly,* 210 Mass. 487, 97 N. E. 80; *Hanson v. Innis,* 211 Mass. 301, 97 N. E. 756; *Brennan v. United Hatters,* 73 N. J. Law, 729, 65 Atl. 165; *Ruddy v. United Asso.* 79 N. J. Law, 467, 75 Atl. 742; *Chambers v. Probst,* 145 Ky. 381, 140 S. W. 572; *Lucke v. Clothing C. & T. Assembly,* 77 Md. 396, 26 Atl. 505; *Hollenbeck v. Ristine,* 114 Iowa, 358, 86 N. W. 377; *Wyeman v. Deady,* 79 Conn. 414, 65 Atl. 129; *London G. & A. Co. v. Horn,* 206 Ill. 493, 69 N. E. 526; *Gibson v. Fidelity & C. Co.* 232 Ill. 49, 83 N. E. 539; *Ill. S. Co. v. Brenshall,* 141 Ill. App. 36; *Chipley v. Atkinson,* 23 Fla. 206, 1 South. 934.

Undoubtedly cases might arise where an insurer such as the defendant might be justified in saying to the insured that it would cancel its policy unless a certain employee was discharged. Such employee might be so careless of his own safety or the safety of his fellow-servants that the insurer might not care to assume the added hazard that would be liable to follow from such conduct. We have no such case before us, however. The jury might well find in the present case that the purpose which the defendant had in mind was

to deprive the plaintiff of his earning power so that he could not successfully carry on his suit to recover damages for the injuries which he had received. This savors too strongly of oppression to be considered a legitimate reason for a third party interfering with the relations between employer and employee.

2. On the second question raised, we think the defendant should prevail. *Johnson* was a day laborer who had the right to quit work at any time without breaching his contract of employment. His employer might dispense with his services at any time for or without cause. This being so, if the employer reached the conclusion that it was not good business policy to keep in its employ men who were suing it, it was acting within its legal rights. We do not see how the Simmons Company or its officers have any interest, near or remote, in the present controversy. We think the president of the company, and the former general superintendent of it, who, by the way, was not in its employ when this action was tried, stood before the court and jury in no other light than that of disinterested witnesses. We do not think their testimony could be disregarded by the jury, where it was uncontradicted, unless the evidence itself was inherently improbable or unless something was shown that warranted the jury in concluding that they testified falsely, and, it may be said, wilfully so testified, because if their testimony was in fact untrue there is little room for saying that it was the result of an honest mistake.

The plaintiff might have been discharged because he was careless of his own safety or of that of his fellow-workers in the manner of doing his work, or because he was not competent or faithful, or because he had sued his employer, or because the employer had no further need of his services, or because of the meddlesome intervention of a third party, or for other reasons. When the plaintiff rested he had made a *prima facie* case, because on the evidence offered by him and

so long as it stood alone and unexplained the jury might. legitimately infer that the requests or suggestions of the defendant were what prompted the discharge.     There is no conflict whatever between the facts testified to by the witnesses on whose testimony plaintiff relies and those testified to by Simmons and Vincent.    Plaintiff's proofs showed that the defendant desired that plaintiff should be discharged and that shortly thereafter he was discharged.    He offered no evidence to show that he was in fact discharged because of defendant's request, but rested on the contention that it was a perfectly rational conclusion for the jury to draw that the cause shown was responsible for the result which followed.    The conferences and correspondence between the representatives of the defendant and the Simmons Manufacturing Company were all with Vincent, the general superintendent of that company. He testified that they had nothing whatever to do with the discharge, and in effect that he paid no attention to the request.    He said that such requests, verbal or written, were never called to Simmons's attention, and that the letter suggesting plaintiff's discharge was written to him personally and was placed in a file in which he kept correspondence dealing with matters that came under his charge.    He further testified that he was directed by Simmons to discharge the plaintiff before the matter came up with the insurance company.    He construed the direction as allowing him some discretion.    Personally he thought it bad policy to discharge employees who had brought suit against the company, so he allowed *Johnson* to remain.    Later Simmons saw *Johnson* at work in the shop, and peremptorily ordered his discharge, and plaintiff was dismissed because of this order.    Simmons testified to substantially the same state of facts, and very definitely stated that he knew nothing of any request having been made by the defendant for plaintiff's discharge.    His reason for ordering it, as stated by him, was that he had had some disastrous experiences from retaining men in his em-

ployment with whom he was having a lawsuit and he had decided to pursue a different policy. These two witnesses were cross-examined at great length. It is argued that such examinations showed lapses of memory and inaccuracy of statement. These so-called lapses were few and trifling and related to really immaterial details. On the main question their evidence is unshaken. On this question both of them knew whether the discharge was made at defendant's request or not. There is the possibility that they might have committed perjury, but there is hardly even a remote possibility that they were mistaken. If they had any interest in suppressing the truth it is not disclosed or suggested. The witnesses in testifying to the cause of plaintiff's discharge were testifying to a fact pure and simple. *Bowe v. Gage,* 127 Wis. 245, 249, 106 N. W. 1074; *Barker v. Western Union T. Co.* 134 Wis. 147, 153, 114 N. W. 439; *Sharpe v. Hasey,* 141 Wis. 76, 79, 123 N. W. 647; *Palmer v. Smith,* 147 Wis. 70, 73, 132 N. W. 614.

The situation then is this: Certain facts were testified to from which it might be inferred that defendant was responsible for plaintiff's discharge; this inference might or might not be correct. But the parties who made the discharge testify that defendant's acts had nothing to do with it and that it was made for a wholly different cause. Such evidence shows that the inference claimed would be incorrect. The question is: Have we any conflict in the evidence, nothing being shown to contradict or impeach the witnesses who testified directly what the cause of the discharge was? Does the mere inference that might be drawn from plaintiff's evidence in itself raise an issue for a jury, or has it been wiped out because not supplemented in some way? Was it not incumbent on the plaintiff to offer some evidence tending to show that the discharge was not made for reasons given by Vincent and Simmons?

It frequently happens that although a plaintiff may have

made a case which entitles him to go to the jury when he rests, or which would entitle him to a directed verdict if no other testimony were offered, he has no jury question left when the defendant rests.

If A. brings an action on a promissory note, he makes a *prima facie* case by offering it in evidence. The possession of the note raises a presumption or inference of nonpayment. But if unimpeached and disinterested witnesses swear that they saw it paid and heard the plaintiff agree to surrender it, or testify that they were present when it was delivered and that it was given in payment of a debt incurred in a gambling transaction, there is no jury question left, unless the credibility of this evidence is in some way attacked.

Perhaps the fire cases furnish a better illustration. A person owning timber some distance from a railroad finds that it has been burned. He finds that a fire was negligently permitted to escape from the right of way and knows that the prevailing wind would drive the fire in the direction of his property and traces the fire line to it. The inference may be very strong that the fire originating on the right of way caused the damage. But if unimpeached disinterested witnesses testify to an independent fire which originated between the right of way and the property burned and that they saw such fire spread to and burn the plaintiff's timber before the right-of-way fire was set, the inference spoken of is destroyed unless some evidence is offered which disputes this direct testimony as to the actual cause of the burning. *Marvin v. C., M. & St. P. R. Co.* 79 Wis. 140, 47 N. W. 1123; *Megow v. C., M. & St. P. R. Co.* 86 Wis. 466, 56 N. W. 1099; *Cook v. M., St. P. & S. S. M. R. Co.* 98 Wis. 624, 74 N. W. 561.

In *Jordan v. Osborne,* 147 Wis. 623, 133 N. W. 32, a witness testified that he did not hear the motorman blow the whistle as he approached a highway crossing. A jury might find from this testimony that the whistle was not blown and

that defendant was negligent in failing to blow it. The motorman testified that he did blow the whistle. There was positive testimony on one side and negative on the other, and it was held that there was no issue for the jury to pass upon.

In *Linden v. M., St. P. & S. S. M. R. Co.* 156 Wis. 527, 143 N. W. 167, four witnesses testified that they did not hear the bell of a locomotive ring as the train approached a crossing. This evidence was disputed by a number of disinterested witnesses besides the train crew. The jury found that the bell was not rung, and the trial court permitted the finding to stand. This court held that the positive and direct testimony of the defendant's witnesses left no issue for the jury to pass upon, and reversed the judgment.

In *Riger v. C. & N. W. R. Co.* 156 Wis. 86, 144 N. W. 204, one witness who was in a state of excitement and had only a momentary view of a train testified that it was going sixteen or seventeen miles per hour. This evidence standing alone would warrant the jury in finding that the speed exceeded the lawful rate of twelve miles per hour. The train crew, as well as several disinterested witnesses, estimated the speed at from four to seven miles per hour. The jury found that the speed exceeded twelve miles per hour. The trial court set aside this finding and ordered judgment for defendant. That judgment was affirmed in this court because it was thought the inference or conclusion that might be drawn from the evidence of the single witness was completely overcome.

In *McCabe v. Milwaukee E. R. & L. Co.* 156 Wis. 621, 146 N. W. 806, there was some slight evidence which, if it stood alone and uncontradicted, might warrant the jury in arriving at the verdict returned. The trial court permitted the verdict to stand. This court reversed the judgment and ordered the action dismissed.

In *Milwaukee v. Plath,* 156 Wis. 586, 146 N. W. 782, the complaining witness, beyond peradventure, testified to a state

of facts which, were it not for the other evidence in the case, entitled the plaintiff to have the issue of self-defense submitted to the jury. This court affirmed the decision of the trial court, holding that on the whole evidence there was no question left for submission to the jury.

In *Koepke v. Milwaukee,* 112 Wis. 475, 88 N. W. 238, two witnesses testified to defective conditions which they found in a sidewalk. Their examination was made in the darkness and while they were laboring under excitement. It was said that such evidence did not present a jury issue when opposed to the testimony of seven other witnesses who made what they testified to be accurate measurements.

Again in *Konkel v. Pella,* 122 Wis. 143, 99 N. W. 453, it was held that the estimates of distances made by certain witnesses presented no issue for the jury where other witnesses testified to carefully made measurements. See, further, *Neale v. State,* 138 Wis. 484, 486, 120 N. W. 345; *Wanta v. Milwaukee E. R. & L. Co.* 148 Wis. 295, 298, 134 N. W. 133.

In *Busse v. State,* 129 Wis. 171, 173, 108 N. W. 64, it is said:

"It has often been held that the testimony of even disinterested and unimpeached witnesses on the subjects of measurements, distances, dates, and the like, which is based merely on memory, estimate, or casual observation, must yield to that which is based on actual measurement or reference to definite data."

Other cases to the same effect are *Robinson v. Eau Claire B. & S. Co.* 110 Wis. 369, 374, 85 N. W. 893; *Bohan v. M., L. S. & W. R. Co.* 61 Wis. 391, 21 N. W. 241.

The facts in the cases cited vary. However, they are decided on the basic principle that where unimpeached witnesses testify from accurate and positive knowledge of the facts concerning which they speak, their evidence is not controverted by indefinite statements, by mere negative testi-

mony, or by doubtful inferences that might be drawn from facts concerning which there is no dispute.

The evidence of Vincent and Simmons was clear. They do not dispute a single material fact testified to by any other witness in the case, and no other witness disputes a material fact testified to by them. A mere inference contrary to the facts directly testified to might have been drawn from the other evidence, and that is all. We do not think that at the close of the testimony there was any question of causal relation between the facts shown by the plaintiff and his discharge for the jury to pass upon. The question before us is well summed up in *Ives v. Wis. Cent. R. Co.* 128 Wis. 357, 361, 107 N. W. 452, where it is said:

"It has often been declared that when credible and unimpeached witnesses, having exact and certain knowledge so that they cannot be mistaken, testify affirmatively to the existence of a fact, such testimony is not put in issue by mere negative evidence of persuasive facts which, but for the affirmative evidence, might support an inference against the existence of the material fact; where at least the negative testimony may within reason be true and yet the fact may have existed."

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

The following opinion was filed May 6, 1914:

TIMLIN, J. (*dissenting*). The error which I believe lurks in the majority opinion is disclosed by the cases cited in that opinion in support thereof. A finding that one executed and delivered his promissory note, taken with another finding that he thereafter paid it, establishes two consistent facts not in the least contradictory. A finding that a fire was negligently permitted to escape from a railroad right of way and that the wind was then blowing from a given direction, taken together with a finding that the property in question was de-

stroyed by another and different fire, establishes two independent facts not contradictory of one another.   In these cases if the ultimate propositions of fact are not inconsistent or contradictory the evidence to establish each is not.   This relation of issues to one another has been long known in the law as confession and avoidance.   But I do not understand that competent circumstantial evidence is nullified or is to be removed from the consideration of the jury merely because of oral testimony of witnesses in negation thereof.

The defendant requested in writing that the employer discharge the plaintiff, and with reasonable promptness after the receipt of such request the plaintiff was so discharged.   Two agents of the corporation employer take the stand.   The superior agent testifies that he did not know of the written request, but ordered the discharge of the plaintiff upon the same ground contained in the request.   The other agent admits receipt of the request to discharge and actually made the discharge, but, as he testifies, because ordered to do so by the superior agent of the corporation employer and not because of the request of the defendant.   Under such circumstances I think there is a question of fact for the jury.   It will be observed that the testimony on the part of the employer exonerating the defendant insurance company goes to the motive which prompted the discharge and in the nature of things would always be irrebuttable except by circumstantial evidence.

I am authorized to say Mr. Justice KERWIN concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on October 6, 1914.